# EXHIBIT 4

Texas:
3021 Ridge Road, Suite A-130
Rockwall, Texas  75032
Phone:  (214) 458-6009
Fax:  (303) 265-9087

Colorado:
1550 Larimer Street, Suite 251
Denver, Colorado  80202
Phone:  (303) 330-8636
Fax:  (303) 265-9087

# Wendy Carlson

## Expert Document Examiner

www.AmericasHandwritingExpert.com
ws.carlson@yahoo.com

JUNE 30, 2015

### FORENSIC HANDWRITING AND DOCUMENT EXAMINER EXPERT REPORT

Forensic Document Examination
Conducted on Request of

James Thomaidis

of

Gersh & Thomaidis LLC
1860 Blake Street, Suite 400
Denver, Colorado  80202

Regarding

Questioned Signatures of Jack Handley and Joseph Domingot

i

**EXHIBIT B**

Forensic Document Examination
of questioned signatures Jack Handley and Joseph Domingot

TABLE OF CONTENTS

SECTION 1        CURRICULUM VITAE

SECTION 2        EXHIBITS (QUESTIONED AND KNOWN SIGNATURES)

SECTION 3        DETAILED REPORT - BASIS FOR OPINION

SECTION 4        LIST OF DISSIMILARITIES AND ENLARGED EXHIBITS

SECTION 5        LEGAL DATA
                 United States v. Janet L. Thornton, *Case No. 02-M-9150-01*
                 To support accuracy of Handwriting Experts at 93.5%

SECTION 6        COMPENSATION AND FEE SCHEDULE

SECTION 7        LIST OF TRIAL AND OTHER TESTIMONIES

SECTION 8        LIST OF PUBLICATIONS

ii

**EXHIBIT B**

Texas:
3021 Ridge Road, Suite A-130
Rockwall, Texas 75032
Phone: (214) 458-6009
Fax: (303) 265-9087

Colorado:
1550 Larimer Street, Suite 251
Denver, Colorado 80202
Phone: (303) 330-8636
Fax: (303) 265-9087

# Wendy Carlson
### Expert Document Examiner
www.AmericasHandwritingExpert.com
ws.carlson@yahoo.com

## Curriculum Vitae

### Qualifications:

*Wendy Carlson is a Certified Forensic Document Examiner and Registered Investigator. Ms. Carlson has been qualified as an Expert by State, Local, and Federal courts and has testified in Arizona, Arkansas, Colorado, Florida, Michigan, New York, Oklahoma, Pennsylvania, South Dakota, Texas, Utah, Virginia, Washington and Wyoming. She has studied handwriting and document examination and apprenticed under some of the leading court-qualified Forensic Document Experts in the U.S.A. Wendy has been appointed by federal and state court judges to render opinions on handwriting issues in Colorado and Texas and has completed forensic document examinations for government entities such as Grand Prairie Police Department, Hill County and State Bar of Texas in Texas; Offices of the State or Federal Public Defenders in Nevada, New York and Wyoming; Office of the General Counsel in Oklahoma; Buena Vista Police Department, Chaffee County Sheriff's Department, and City and County of Denver in Colorado.*

*In the last six years, Ms. Carlson has examined more than 10,000 documents and rendered opinions in approximately 850 active cases and multiple peer reviews involving questioned signatures, altered documents, handwritings, legal contracts, court documents, anonymous writing, and graffiti. Ms. Carlson has rendered opinions on documents from clients in the following states and foreign countries: Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, Wyoming, Washington D.C., Albania, Bahamas, Canada, Chile, Cook Islands, Estonia, Haiti, Hong Kong, India, Kenya, Liberia, London, Morocco, New Zealand and Ukraine. Ms. Carlson has examined documents and rendered opinions for handwriting comparisons written in Afghani, Arabic, Chinese, Eastern Indian, English, Greek, Korean and Spanish writing.*

*Ms. Carlson's expertise was featured in CNN, The Dallas Morning News, and The Houston Chronicle, as well as investigative reports by ABC's The Denver Channel and CBS4 in Denver, Colorado. Ms. Carlson was hired by the State of Colorado's Denver Election Division to teach employees how to identify a questioned signature prior to the 2011, 2012, 2013 and 2014 local and national elections.*

### Forensic Examination Provided For:

*Disputed documents or questioned signatures on wills, checks, contracts, deeds, account ledgers, suspect documents, forgeries, identity theft, anonymous letters and writings, alterations, obliterations, erasures, typewritten documents, altered medical records, graffiti, handwritten numbers, computerized and/or handwritten documents, suicide notes, and autograph authentication.*

### Education:

<u>International School of Forensic Document Examination</u>, *Los Angeles, California, 2007-2009*

*Certification after completion of a two-year course and apprenticeship under leading authorities in the field of Forensic Document Examination and Handwriting Identification from the International School*

1

**EXHIBIT B**

*of Forensic Document Examination.   Attended weekly classes, lectures and teleseminars from Court Qualified Document Examiners and Instructors Bart Baggett, Robert Baier, Don Lehew, and Beth Chrisman.  Prepared for, observed, and testified in actual court trials.*

*Twelve years experience assisting multiple trial attorneys in case and trial presentation, 1996-2008*

*American College of Forensic Examiners International*

*Certification after Completion of Registered Investigator Course, July 2010*
*Certification after Completion of Crime Scene Investigation Course, November 2010*
*Certification after Completion of Digital Forensics Introduction Course, November 2010*

*American Institute of Applied Science, Inc.*

*Completed lessons and exams for Questioned Documents course, April 2012*

**Specific Areas of Training:**

*Handwriting Identification and Discrimination, Signature Comparison, Techniques for Distinguishing Forged Signatures, Disguised Handwriting, Hand Printing, Block Printing, Altered Numbers, Anonymous Writing, Factors that Affect Writing, Altered Documents, Trial and Deposition Preparation, Document and Exhibit Preparation for Court, Discriminating Elements of Handwriting, Obliterated Writing, Ethics Requirements of a Document Examiner.*

**Laboratory Equipment and Library Available for Use in Examination:**

*Richter Optica S6.6 LCD Stereo Zoom Microscope with screen and camera, handheld magnifying devices and loupes of 3x-20x, Light Tracer light box, protractor, metric measuring devices, portable black light, Kodak 10x Optical IS digital camera, iMac computer and software, 21.5-inch flat screen monitor, multiple scannesr, printers and copiers.   Various books and articles on document examination, handwriting, and hundreds of detailed case studies from actual cases.*

**Professional Memberships:**

*Scientific Association of Forensic Examiners*
*American College of Forensic Examiners International*
*Center of Forensic Profiling*
*Forensic Expert Witness Association*
*Sheriff's Association of Texas*
*Texas Police Association*

**Publications:**

*How to Spot a Forgery*
*Working With an Expert Witness*

**Lectures, Seminars and Continuing Education:**

| | |
|---|---|
| 11/12/08 | The Scope and Sources of Document Examination; Professor: Bart Baggett |
| 12/03/08 | Science, Scientific Method, and Writing Identification; Professor: Bart Baggett |
| 12/10/08 | Review and Discussion of American Society for Testing and Materials; Professor: Bart Baggett |
| 12/12/08 | Assistance in preparation and observation of forgery trial held in the Bahamas with C. L. Baggett |
| 02/18/09 | Understanding the Trial; Professor: Bart Baggett |
| 02/28/09 | Real Case Mock Trial |
| 03/11/09 | A Guide to Law and the Courts, and Rules of Evidence; Professor: Bart Baggett |
| 03/25/09 | Real Case Mock Trial |
| 06/23/07 | Trial and deposition appearance, testimony, and presentation; Lecturer: Carolyn West |
| 07/02/09 | ASTM Guidelines; Professor: Bart Baggett |
| 07/09/09 | Jury Selection and an Understanding the Law and the Courts; Real Case Mock Trial; Professor: Bart Baggett |

2

*Section 1: Curriculum Vitae*

**EXHIBIT B**

| | |
|---|---|
| 07/23/09 | The Rules and Future Challenges to the Expert; Professor: Bart Baggett |
| 09/25/09 | Critical Incident Stress:  Statement Analysis and Interview v. Interrogation; Instructor: Faith Wood |
| 01/28/10 | Working with the Expert Witness...the Plaintiff Attorney's Prospective; Lecturer:  Windle Turley, Esq. |
| 07/15/10 | Certification after Completion of Registered Investigator Course, ACFEI, July 2010 |
| 08/14/10 | Forensic Document Examination Seminar training and instruction with Professor Bart Baggett and Instructor Robert Baier |
| 08/14/10 | Identity Theft and Prevention; Instructor Robert Baier |
| 08/15/10 | Testing of students for Certification at Handwriting University |
| 08/31/10 | Introduction to Forensic Document Examination; Instructors Bart Baggett and Beth Chrisman |
| 09/29/10 | Attendance and observation of deposition held in Texas with C. L. Baggett |
| 10/01/10 | Lecturer and Instructor - Introduction to Forensic Document Examination, Clear Lake High School, Houston, Texas |
| 11/08/10 | CLE:  Demystifying Daubert:  Daubert's Effect on Your Work as an Expert Witness; presented by The TASA Group, Inc. |
| 11/16/10 | Certification after Completion of Crime Scene Investigation Course, ACFEI, November 2010 |
| 11/16/10 | Certification after Completion of Digital Forensics Introduction Course, ACFEI, November 2010 |
| 04/15/11 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 03/08/12 | Continuing research on Science and the Scientific Method |
| 03/11/12 | Continuing research on the Significance of Measurements in Forensic Document examination |
| 04/02/12 | Continuing research on Disguised Handwriting |
| 04/06/12 | Completed American Institute of Applied Science, Inc. lessons and exams for Questioned Documents course |
| 06/08/12 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 08/17/12 | Attendance and observation of criminal trial with Bart Baggett, Expert QDE, in Los Angeles, California |
| 10/12/12 | Lecturer and Instructor - Refresher Course:  "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 10/16/12 | Continuing research regarding ESIGN, electronic documents and records, and electronic signatures |
| 12/15/12 | Speaker - Holographic Wills and Signatures, Military Order of Purple Hearts Annual Meeting, Dallas, Texas |
| 02/05/13 | Speaker - Introduction to the Science of Handwriting and Document Examination, Jesuit College Preparatory School, Forensic Science Department, Dallas, Texas |
| 02/21/13 | Speaker - Introduction to the Science of Handwriting and Document Examination, Irma Lerma Rangel Young Women's Leadership School, Dallas, Texas |
| 02/20/14 | Expert Witnesses and Lawyers Caught Off Guard:  Lessons Learned, EJ Janik, Gary Kessler, Esq. |
| 10/18/13 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 05/14/14 | Continuing research on handwriting of individuals with Parkinson's Disease |
| 06/06/14 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 06/23/14 | Instruction and Training of new ballot and voter signature input equipment and software, Denver Elections Division, Denver, Colorado |
| 01/19/15 | Lecture and Presentation/Training – "How to Spot a Forgery", Colorado County Clerks Association, Pueblo, Colorado |

*Section 1: Curriculum Vitae*

**EXHIBIT B**

EXHIBITS OF QUESTIONED AND KNOWN HANDWRITING AND SIGNATURES
OF
JACK HANDLEY, JOSEPH DOMINGOT and RYAN DAVIS

4

**EXHIBIT B**

# QUESTIONED SIGNATURES



IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representative as of the date and year indicated above.

PORCELANOSA USA
COMPANY

By:

Authorized Representative

CREW TILE DISTRIBUTION
DISTRIBUTOR

By:

Authorized Representative

By:

Authorized Representative

QDE EXHIBIT

Q1

**EXHIBIT B**

This is a legal binding agreement between IFD and PG. If agreement is breeched or broken IFD and PG have legal rights to seek damages to include loss profits, attorney fees, travel

INFINITE FLOORING & DESIGN CORP.
1070 West 124th Ave. Suite 100
Westminster Colorado 80234

By: ~~R - D~~   7-27-07
Name: Ryan A. Davis
Title: Chief Executive Officer

PORCELANOSA GROUP
1301 South State College Blvd.
Anaheim California 92806

By: ~~[signature]~~   7/29/07
Name: Josep Domingo
Title: General Manager

QDE EXHIBIT
**Q2**

CREW10063
**EXHIBIT B**

# KNOWN HANDWRITING AND SIGNATURES OF

# JACK HANDLEY

Porcelanosa USA

Banking Transit/ABA: _____ Acct No.

_____

DEPOSITORY: _____

BANK NAME

___ Checking
___ Savings    _____
                    ADDRESS        CITY/STATE        ZIP
_____
ded. codes

Amount to be Credited: $_____

Banking Transit/ABA: _____ Acct No.

_____

This authorization is to remain in full force and effect until Porcelanosa has received written notification from me of its termination in such time and in such manner as to afford Porcelanosa a reasonable opportunity to act on it, or I complete and sign a new Automatic Deposit Form.

_____        3-15-07
            Signature                         Date

_____ I hereby request all direct deposit to stop immediately. Date:
_____
(initials)

QDE EXHIBIT
JHK1

August 01, 2005
                    Human Resources Department                    2

EXHIBIT B

# Form W-4 (2006)

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Because your tax situation may change, you may want to refigure your withholding each year.

**Exemption from withholding.** If you are exempt, complete only lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2006 expires February 16, 2007. See Pub. 505, Tax Withholding and Estimated Tax.

**Note.** You cannot claim exemption from withholding if (a) your income exceeds $850 and includes more than $300 of unearned income (for example, interest and dividends) and (b) another person can claim you as a dependent on their tax return.

**Basic instructions.** If you are not exempt, complete the **Personal Allowances Worksheet** below. The worksheets on page 2 adjust your withholding allowances based on itemized deductions, certain credits, adjustments to income, or two-

earner/two-job situations. Complete all worksheets that apply. However, you may claim fewer (or zero) allowances.

**Head of household.** Generally, you may claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals. See line E below.

**Tax credits.** You can take projected tax credits into account in figuring your allowable number of withholding allowances. Credits for child or dependent care expenses and the child tax credit may be claimed using the **Personal Allowances Worksheet** below. See Pub. 919, How Do I Adjust My Tax Withholding, for information on converting your other credits into withholding allowances.

**Nonwage income.** If you have a large amount of nonwage income, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you may owe additional tax.

**Two earners/two jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one Form W-4. Your withholding usually will be most accurate when all allowances are claimed on the Form W-4 for the highest paying job and zero allowances are claimed on the others.

**Nonresident alien.** If you are a nonresident alien, see the Instructions for Form 8233 before completing this Form W-4.

**Check your withholding.** After your Form W-4 takes effect, use Pub. 919 to see how the dollar amount you are having withheld compares to your projected total tax for 2006. See Pub. 919, especially if your earnings exceed $130,000 (Single) or $180,000 (Married).

**Recent name change?** If your name on line 1 differs from that shown on your social security card, call 1-800-772-1213 to initiate a name change and obtain a social security card showing your correct name.

---

**Personal Allowances Worksheet (Keep for your records.)**

A   Enter "1" for yourself if no one else can claim you as a dependent . . . . . . . . .   **A** ____

B   Enter "1" if:
- You are single and have only one job; or
- You are married, have only one job, and your spouse does not work; or
- Your wages from a second job or your spouse's wages (or the total of both) are $1,000 or less.   **B** ____

C   Enter "1" for your spouse. But, you may choose to enter "-0-" if you are married and have either a working spouse or more than one job. (Entering "-0-" may help you avoid having too little tax withheld.) . . . .   **C** ____

D   Enter number of **dependents** (other than your spouse or yourself) you will claim on your tax return . . . . .   **D** ____

E   Enter "1" if you will file as **head of household** on your tax return (see conditions under **Head of household** above) . .   **E** ____

F   Enter "1" if you have at least $1,500 of **child or dependent care expenses** for which you plan to claim a credit . .   **F** ____
(**Note.** Do **not** include child support payments. See Pub. 503, Child and Dependent Care Expenses, for details.)

G   **Child Tax Credit** (including additional child tax credit):
- If your total income will be less than $55,000 ($82,000 if married), enter "2" for each eligible child.
- If your total income will be between $55,000 and $84,000 ($82,000 and $119,000 if married), enter "1" for each eligible child plus "1" **additional** if you have four or more eligible children.   **G** ____

H   Add lines A through G and enter total here. (**Note.** This may be different from the number of exemptions you claim on your tax return.)   ▶   **H** ____

| For accuracy, complete all worksheets that apply. | • If you plan to **itemize** or claim adjustments to income and want to reduce your withholding, see the **Deductions and Adjustments Worksheet** on page 2. |
|---|---|
| | • If you have more than one job or are married and you and your spouse both work and the combined earnings from all jobs exceed $35,000 ($25,000 if married) see the **Two-Earner/Two-Job Worksheet** on page 2 to avoid having too little tax withheld. |
| | • If neither of the above situations applies, stop here and enter the number from line H on line 5 of Form W-4 below. |

- - - - - - - - - - - - - - - - **Cut here and give Form W-4 to your employer. Keep the top part for your records.** - - - - - - - - - - - - - - - -

---

**Form W-4**
Department of the Treasury
Internal Revenue Service

## Employee's Withholding Allowance Certificate

▶ Whether you are entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS.

OMB No. 1545-0074

**2006**

| 1  Type or print your first name and middle initial. | Last name | | 2  Your social security number |
|---|---|---|---|
| Jack W. | Hannity | | 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 |

| Home address (number and street or rural route) | 3  ☐ Single  ☐ Married  ☐ Married, but withhold at higher Single rate. |
|---|---|
| 1630 Dakota Rd | Note. If married, but legally separated, or spouse is a nonresident alien, check the "Single" box. |
| City or town, state, and ZIP code | 4  If your last name differs from that shown on your social security |
| Greenwood, CO 80421 | card, check here. You must call 1-800-772-1213 for a new card. ▶ ☐ |

| 5 | Total number of allowances you are claiming (from line H above **or** from the applicable worksheet on page 2) | **5** | 1 |
|---|---|---|---|
| 6 | Additional amount, if any, you want withheld from each paycheck . . . . . . . . . . . . | **6** | $ |
| 7 | I claim exemption from withholding for 2006, and I certify that I meet **both** of the following conditions for exemption. | | |
| | • Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability **and** | | |
| | • This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability. | | |
| | If you meet both conditions, write "Exempt" here . . . . . . . . . ▶ | **7** | |

Under penalties of perjury, I declare that I have examined this certificate and to the best of my knowledge and belief, it is true, correct, and complete.

Employee's signature
(Form is not valid
unless you sign it.)  ▶  *[signature]*          Date ▶  7-11-06

| 8  Employer's name and address (Employer: Complete lines 8 and 10 only if sending to the IRS.) | 9  Office code (optional) | 10  Employer identification number (EIN) |
|---|---|---|

Cat. No. 10220Q

**QDE EXHIBIT**
**JHK2**
**EXHIBIT B**

# PERFORMANCE APPRAISAL

Employee Name: Jack Hensley

Job Title:

ALD/Commercial Mgr

Department:

Business Unit:

Arapahoe

Date: 1-Aug-05

PROCEDURE: The following job-related performance factors are associated with job success or failure. Complete the block-by-block information on the back of the form. This form is arranged so the most important areas for success are at the top. Determine which level matches the employee's performance. Type the corresponding numerical value in the box that corresponds to the level which the employee has performed. Type the corresponding numerical value in the box that corresponds to the level which the employee has performed. Type the corresponding numerical value. Total the evaluation of the employee's performance in accordance with the Rating Determination table below.

| CRITERIA | Below Job Requirements | Achieves Job Requirements | Exceeds Job Requirements | Performance exceeds the requirements of the job in all major areas and significant work beyond the responsibilities of the job was achieved. | Observations | Insert Numerical Value (0-3) |
|---|---|---|---|---|---|---|
| | Performance was below job requirements in one or more important areas with extra effort evident in the case of one or more of the following: quality, quantity, timeliness, or other important dimensions of performance. | Performance met job requirements in all important areas with extra effort evident in the case of one or more of the following: quality, quantity, timeliness, or other important dimensions of performance. | Performance exceeded the requirements of the job in several important areas and/or significant work beyond important results. | Performance exceeded the requirements of the job in all major areas and significant work beyond the responsibilities of the job was achieved. | Cite outstanding accomplishments and employee's strong points. Describe where improvement or additional training is needed. | |
| KNOWLEDGE | | | | | | 2 |
| PRODUCTIVITY | | | | | | 2 |
| QUALITY | | | | | | 2 |
| INITIATIVE | | | | | | 2 |
| COOPERATION | | | | | | 2 |
| DEPENDABILITY | | | | | | 2 |
| ORGANIZATION | | | | | | 2 |
| PROBLEM SOLVING | | | | | | 2 |
| ATTITUDE | | | | | | 2 |
| CUSTOMER SERVICE | | | | | | 2 |
| | | | | | Total Score | 22 |

OVERALL RATING DETERMINATION

Employee Signature

Supervisor's Signature

Date

All complaints of sexual or other unlawful harassment or discrimination will be investigated promptly, impartially, and in as confidential a manner as possible, except to the extent that disclosure may be necessary for the purpose of investigation or remedial action. When the investigation is complete, a determination regarding the allegations will be made and communicated to the person claiming discrimination and/or harassment as soon as practical. The Company will also take such action as it believes is appropriate under the circumstances, including training, referral to counseling, warning, reassignment, compensation adjustment or termination of the individual found to have engaged in sexual or other unlawful harassment or who retaliates against any individual who complains about harassment or any other discriminatory action.

All employees should also have total confidence that there will be no retaliation for raising a sexual harassment or discrimination complaint or participating in any investigation of a sexual harassment or discrimination complaint. Any employee who engages in retaliatory conduct of any type, including, but not limited to, termination, demotion, suspension, failure to hire or consider for hire, failure to give equal consideration in employment decisions, adversely affecting working conditions or otherwise denying any employment benefit, will be subject to disciplinary action, up to and including termination.

(Please Print) I, Jack Handley _____ have read and understand the Anti-Harrassment Policy for Porcelanosa –USA.

X _____ Signature

X 1-21-10 _____ Date



QDE EXHIBIT
JHK4

EXHIBIT B

## PORCELANOSA-USA

## TO BE SIGNED BY NEWLY HIRED OR CURRENT EMPLOYEE
## ACKNOWLEDGMENT OF UNDERSTANDING

I, *JACK BRADLEY* acknowledge receipt of the Company's Employee Handbook revised January 2008, containing policies and procedures of the Company as well as outlining my privileges and obligations. I understand and agree to read and comply with the policies, practices and regulations contained in the Handbook as well as any other company policies, practices and regulations. I understand that except for the "at-will" nature of my employment, all other rules, policies, and benefits contained in this Employee Handbook and other related documents may be amended, modified, discontinued or eliminated at any time.

I further understand and agree that my employment with the Company and any of its related entities (referred to as the "Company") is for an unspecified term and is based upon mutual consent and may be terminated at will by either party. Therefore, my employment and compensation may be terminated by the Company or me "at will" at any time, for any or for no reason, with or without cause or prior notice. Additionally, I understand and agree that the at-will nature of my employment relationship with the Company means that the terms of my employment at the Company, including but not limited to promotion, demotion, discipline, transfer, compensation, benefits, duties and location of work, may be changed by the Company at any time, with or without notice, and for any or for no reason. Although other terms or conditions of employment may change, this at-will aspect of my employment relationship will remain in effect throughout my employment with the Company, and cannot be changed, modified, amended, or rescinded except by an individual written employment agreement signed by the Company and me. I also understand and agree that nothing in the employee handbook or the Company' discretionary use of corrective discipline creates any express or implied contract to the contrary and that this employee handbook is not a contract of employment. Accordingly, I will not interpret this employee handbook in any way that will create any expressed or implied contractual rights between the Company and me. I understand and agree that any verbal or written representations by anyone to the contrary are invalid and should not be relied upon by anyone. This at-will nature of my employment sets forth the entire agreement on this subject and supersedes any prior oral or written understandings or statements.

I HAVE CAREFULLY READ THIS ACKNOWLEDGEMENT AND I AGREE TO THE ABOVE CONDITIONS OF EMPLOYMENT.

_____     DATE  1-21-10
EMPLOYEE

_____     DATE_____
WITNESS

*NOTE: Upon completion of this acknowledgment sheet, remove it from the remainder of th Employee Handbook and submit it to Human Resources for insertion in your personnel file*



QDE EXHIBIT

JHK5

0

**EXHIBIT B**

Porcelanosa USA

Certification and Agreement - Please read the following statements carefully before signing. If you have any questions regarding these conditions of employment, please ask them of the employment interviewer before signing.

(A) This application will be given every consideration, but its receipt does not imply that I will be employed. I understand that a surety bond will be required for specific positions of Porcelanosa employees. Should it be determined that I am not bondable; Porcelanosa will be unable to offer me employment.

(B) I authorize the procurement of a consumer report by Porcelanosa as part of the pre-employment background investigation. If hired, this authorization shall remain on file and shall serve as an ongoing authorization for Porcelanosa to procure consumer reports at any time during my employment.

(C) Should I be employed, I agree to read my Employee Handbook and sign an acknowledgment of receipt and understanding of the Employee Handbook. In addition, I will abide by Porcelanosa policies and procedures during my employment, if hired. I fully understand that all information, whether written, spoken or otherwise communicated or obtained, and all files and records relating to the business of Porcelanosa or to anyone with whom Porcelanosa has dealings, constitute privileged information and are to be treated in a strictly confidential manner. I fully understand and agree that should I be employed, I am not to, and will not at any time, communicate or reveal any business of Porcelanosa or any such information, records, files, or the matters contained therein to unauthorized personnel within Porcelanosa or to anyone outside Porcelanosa. I also understand any violation of the foregoing may result in disciplinary action, including termination of employment.

(D) I fully understand that Porcelanosa employs only U.S. citizens and properly authorized aliens, and that should I become employed, federal law requires me to furnish to Porcelanosa proof of my identity and employment authorization, and to sign a statement under penalty of perjury verifying my eligibility for employment as a citizen or national of the United States or an otherwise employable alien.

(E) I understand that Porcelanosa has a policy against the use, possession or distribution of illegal drugs, including the abuse of alcohol by it employees. I further understand that Porcelanosa has a Drug and Alcohol Abuse Policy, and understand that violation of this Policy may result in disciplinary action up to and including termination.

(F) I hereby authorize and request that my current and all former employers furnish Porcelanosa, with information about my employment record, including a statement of the reason for the termination of my employment, work performance, abilities and other qualities pertinent to my qualifications for employment; hereby releasing them and Porcelanosa from all liability and responsibility arising from any information provided.

I CERTIFY THAT ALL STATEMENTS MADE BY ME ON THIS APPLICATION ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF AND THAT I HAVE WITHHELD NOTHING THAT WOULD, IF DISCLOSED, AFFECT THIS APPLICATION UNFAVORABLY. I HEREBY ACKNOWLEDGE THAT I HAVE READ THE ABOVE CERTIFICATION AND AGREEMENT STATEMENTS AND UNDERSTAND THE SAME. I UNDERSTAND THAT ANY MISREPRESENTATION OR OMISSION OF FACT IN THIS APPLICATION OR THE HIRING PROCESS WILL BE CAUSE FOR REFUSAL OF EMPLOYMENT OR, IF EMPLOYED, TERMINATION FROM PORCELANOSA.

Applicant Signature: _____     Date: _____

August 01, 2005

Human Resources Department

QDE EXHIBIT
JHKG
EXHIBIT B

4

Porcelanosa USA

# PORCELANOSA USA

By this document, Porcelanosa USA discloses to you that a consumer report, including investigative consumer report containing information as to your character, general reputation, personal characteristics, and mode of living, may be obtained for employment purposes as part of the pre-employment background investigation and at any time during your employment.  Should an investigative consumer report be requested, you would have the right to demand a complete and accurate disclosure of the nature and scope of the investigation requested and a written summary of your rights under the Fair Credit Reporting Act.  Your signature below signifies receipt of the foregoing disclosure.

_____
Applicant

_____
Print Name

_____
Date

QDE EXHIBIT

**JHK7**

6

August 01, 2005

Human Resources Department

**EXHIBIT B**

Porcelanosa USA

**H.   "At Will" Statement**

The employment relationship between the Company and Employee continues to be "at will". This Agreement is not intended nor shall it be construed or interpreted to be an employment contract.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this 15 TH day of _____ 2006.

_____          _____
Witness                                             EMPLOYEE

_____          _____
Witness                                             COMPANY

QDE EXHIBIT

**JHK8**

**EXHIBIT B**

Porcelanosa USA

# APPLICATION FOR EMPLOYMENT

Porven, LTD- and any one or more of its subsidiaries companies is an equal opportunity employer and does not discriminate in recruiting, hiring, training, promoting or other employment practices on the basis of race, color, religion, sex, age, marital status, national origin, political affiliation, familial status, disability, sexual orientation or veteran status. No question in this application is intended to obtain information to be used for such discrimination and you may omit any information that would disclose any basis for discrimination.

Please complete this form in your own handwriting and in ink, even if including a resume. We ask that you fill in all information. If you require additional space for answers, please use an additional sheet of paper.

## Personal Information

| LAST NAME | FIRST NAME | MI | SOCIAL SECURITY NUMBER | TELEPHONE NUMBER | E-MAIL |
|---|---|---|---|---|---|
| | | | | | |

| STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| | | | |

If we are unable to contact you at the address/telephone number listed above, where may you be reached?

| ADDRESS | TELEPHONE NUMBER |
|---|---|
| | |

Are you 18 years of age or older? ☒Yes ☐ No   If not, do you have the proper work permits? ☐Yes ☐ No

HAVE YOU PREVIOUSLY BEEN EMPLOYED AT PORCELANOSA?   IF YES, WHEN, WHERE AND IN WHAT POSITION?
☐Yes ☒No

HAVE YOU PREVIOUSLY APPLIED FOR EMPLOYMENT AT PORCELANOSA?   IF YES, WHEN, WHERE AND IN WHAT POSITION?
☐Yes ☒No

List the names and relationships of any relatives presently working for Porcelanosa.

| NAME | N/A | RELATIONSHIP | |
|---|---|---|---|
| NAME | N/A | RELATIONSHIP | |

HAVE YOU EVER BEEN REFUSED BOND?   IF YES, STATE THE REASON AND DATE BOND WAS REFUSED.
☐Yes ☒No

## Job Requirements

INDICATE SPECIFIC POSITION DESIRED

DO YOU KNOW ANY REASON WHY YOU CANNOT PERFORM THE ESSENTIAL FUNCTIONS OF THE JOB FOR WHICH YOU ARE APPLYING, WITH OR WITHOUT REASONABLE ACCOMMODATIONS?
☐Yes ☒ No   If Yes, please explain

| CAN YOU WORK THE REGULAR HOURS/DAYS/SHIFTS OF THE JOB FOR WHICH YOU ARE APPLYING?   Yes | SALARY SOUGHT   Neg. |
|---|---|

For positions requiring weekend work:

| CAN YOU WORK WEEKENDS?   ☒Yes ☐ No | CAN YOU WORK OVERTIME?   ☒Yes ☐ No |
|---|---|
| CAN YOU TRAVEL OUT OF TOWN OR OVERNIGHT ON YOUR JOB IF NECESSARY?   ☒Yes ☐ No | |

1

QDE EXHIBIT

**JHK9**

EXHIBIT B

Porcelanosa USA

| CHECK APPROPRIATE EMPLOYMENT DESIRED: ☒Full Time ☐ Part Time ☐ Temporary | WHAT DATE WOULD YOU BE AVAILABLE TO BEGIN WORK? *[handwritten]* |
|---|---|

### Education, Training and Skills

| School Attended | Name & Location | Major | Degree |
|---|---|---|---|
| High School | *[handwritten]* | *[handwritten]* | Yes |
| Business or Technical School | *[handwritten]* | *[handwritten]* | Yes |
| College | *[handwritten]* | *[handwritten]* | No |
| College | | | |
| Graduate School | | | |
| Special Training Courses | | | |

Do you plan to continue formal education? ☒Yes ☐ No   If Yes, when, where and what courses? *[handwritten]*

List any academic or community activities, honors, and offices that you presently hold or have held in the past. _____
*[handwritten]*

For positions requiring foreign language:
What language(s) do you speak, read or write? (Indicate languages) *[handwritten]*

Briefly describe below your interests, skills, and aptitudes which you feel qualify you for a position with Porcelanosa.  If you need more space, please continue on a separate sheet of paper. *[handwritten]*

### Employment Experience

Have you ever been discharged or asked to resign from a position? ☐Yes ☒ No   If Yes, explain the circumstances. _____

Have you ever held a position of trust (handling money or confidential material)? ☒Yes ☐ No   If yes, please specify ____
*[handwritten]*

Does your present employer know of your plans to change employment? ☒Yes ☐ No   If not, when may we contact your employer? _____

Briefly state why you desire to make a change in employment. *[handwritten]*

QDE EXHIBIT
JHK10
EXHIBIT B

# KNOWN SIGNATURES OF

# JOSEPH DOMINGOT

## PORCELANOSA LOS ANGELES, INC.
## COMPANY PROPERTY RETURN AGREEMENT

I, the undersigned employee, have received the following items from my employer:

<u>Porcelanosa Los Angeles, Inc.</u>
Employer

(List uniforms, equipment or tools below, including approximate current value.)

1. Dell Laptop Computer and carrier case        $ 950.00 ✓

2. Cell Phone        $ 90.00 ✓

3. Sample Briefcase        $ 60.00 ✓

4. Pagers        ~~$ 40.00~~ NO  (JD)

5. P-Touch Machines        ~~$ 50.00~~ NO  (JD)

6. Sample Boards and other loose samples        NO  (JD)

7. Employee Handbook, product catalogs, manuals ✓

8. Customer lists, pricing lists, computer disks, office keys JD

9. KEYS. + COMPANY CREDIT CARD

If I quit my employment, I agree to return all of the above items by my final day of employment. If my employer terminates my employment, I agree to return all of the above items at the time my employment is terminated. I further agree to return any or all of the above items at any other time my employer so requests.

I acknowledge that all items listed above remain the sole property of Porcelanosa Los Angeles.

_____ _Jose Dominguez_ _____
Employee's Name

_____        _3/18/04_
Employee's Signature        Date

QDE EXHIBIT

JDK1

EXHIBIT B

Porcelanosa Los Angeles - Employee Handbook

*TO BE SIGNED BY NEWLY HIRED OR CURRENT EMPLOYEE*

# PORCELANOSA LOS ANGELES, INC.

## EMPLOYEE HANDBOOK

## ACKNOWLEDGMENT OF UNDERSTANDING

I acknowledge receipt of the PORCELANOSA-LA's Employee Handbook revised August 2003, containing policies and procedures of the Company as well as outlining my privileges and obligations. I understand and agree to read and comply with the policies, practices and regulations contained in the Handbook as well as any other company policies, practices and regulations. I understand that except for the "at-will" nature of my employment, all other rules, policies, and benefits contained in this Employee Handbook and other related documents may be amended, modified, discontinued or eliminated at any time.

I further understand and agree that my employment with PORCELANOSA-LA, and any of its related entities (referred to as the "Company") is for an unspecified term and is based upon mutual consent and may be terminated at will by either party. Therefore, my employment and compensation may be terminated by the Company or me "at will" at any time, for any or for no reason, with or without cause or prior notice. Additionally, I understand and agree that the at-will nature of my employment relationship with The Company means that the terms of my employment at the Company, including but not limited to promotion, demotion, discipline, transfer, compensation, benefits, duties and location of work, may be changed by the Company at any time, with or without notice, and for any or for no reason. Although other terms or conditions of employment may change, this at-will aspect of my employment relationship will remain in effect throughout my employment with the Company, and cannot be changed, modified, amended, or rescinded except by an Individual written employment agreement signed by the General Manager of the Company and me. I also understand and agree that nothing in the employee handbook or the Company' discretionary use of corrective discipline creates any express or implied contract to the contrary and that this employee handbook is not a contract of employment. Accordingly, I will not interpret this employee handbook in any way that will create any expressed or implied contractual rights between the Company and me. I understand and agree that any verbal or written representations by anyone to the contrary are invalid and should not be relied upon by anyone. This at-will nature of my employment sets forth the entire agreement on this subject and supersedes any prior oral or written understandings or statements.

I HAVE CAREFULLY READ THIS ACKNOWLEDGEMENT AND I AGREE TO THE ABOVE CONDITIONS OF EMPLOYMENT.

EMPLOYEE NAME (PRINT): _Jose D Dominguz_

EMPLOYEE SIGNATURE: _____  DATE: 9/19/03

AUTHORIZED SIGNATURE OF
COMPANY MANAGER: _____  DATE: 9/19/03

NOTE:   Upon completion of this acknowledgment sheet, remove it from the remainder of the Employee Handbook and submit it to Human Resources for insertion in your personnel file.

Page 52

QDE EXHIBIT

**JDK2**

EXHIBIT B

# Receipt and Acknowledgement of PORCELANOSA Employee Manual

Please read the following statements, sign below and return to your supervisor.

## Understanding and Acknowledging Receipt of PORCELANOSA Employee Manual.

I have received and read a copy of the PORCELANOSA Employee Manual. I understand that the policies and benefits described in it are subject to change at the sole discretion of PORCELANOSA at any time.

### At-Will Employment

I further understand that my employment is at will, and neither PORCELANOSA nor myself has entered into a contract regarding the duration of my employment. I am free to terminate my employment with PORCELANOSA at any time, with or without reason. Likewise, PORCELANOSA has the right to terminate my employment, or otherwise discipline, transfer, or demote me at any time, with or without reason, at the discretion of PORCELANOSA. No employee of PORCELANOSA can enter into an employment contract for a specified period of time, or make any agreement contrary to this policy without the written approval from the Vice President.

### Confidential Information

I am aware that during the course of my employment confidential information will be made available to me, for instance, product designs, marketing strategies, customer lists, pricing policies and other related information. I understand that this information is proprietary and critical to the success of PORCELANOSA and must not be given out or used outside of PORCELANOSA'S premises or with not-PORCELANOSA employees. In the event of termination of employment, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company.

_Jose Domingot_
Employee's Printed Name

_[signature]_
Employee's Signature

Position

_9/10/2003_
Date

QDE EXHIBIT

JDK3

EXHIBIT B

discipline that are less severe than termination in certain cases. Examples of less severe forms of discipline include verbal counseling, corrective written warnings, and final disciplinary warnings. Repeated violations cannot and will not be tolerated.

We pride ourselves on safety. Our Company goal is to have no work –related injuries. But if you are injured, we expect you to report it immediately to the Personnel Manager or another member or management. Likewise, if you observe an unsafe work condition, report it immediately.

_____          9/10/2001.
Employee Signature                          Date

QDE EXHIBIT
JDK4

**EXHIBIT B**

If you believe that you have been the subject of harassment, you should report the situation immediately to the Personnel Manager, if for any reason you feel uncomfortable discussing the situation with this individual, you should report the situation to the Vice President of Operations or to any other management official with whom you feel comfortable. An employee or agent of the Company who has been found by the Company, after appropriate investigation, to have harassed another employee will be subject to appropriate disciplinary action up to and including termination.

_____          _9/10/2004._____
Employee Signature                                    Date

QDE EXHIBIT

JDK5

EXHIBIT B

20. Soliciting, collecting funds, selling or attempting to sell any merchandise to other individuals on company premises or work sites away from company premises.

21. Distributing any literature or other material of any kind during work time, in work areas, on Company premises or at work sites away from Company premises.

22. Other or repeated violations of the rules and regulations of the Company.

The Foregoing list is not intended to be all-inclusive, but to serve as a guideline of the types of behaviors that are not acceptable at Porcelanosa. No, list, regardless of how extensive it may be, can take the place of common sense and good judgment in the observance of proper standards of conduct.

_____          9/10/2001.
Employee Signature                        _____
                                          Date

QDE EXHIBIT

JDK6

EXHIBIT B

# PORCELANOSA

## EMPLOYEE MANUAL – JULY 1999
### AMENDEMENT – Alcohol and Drugs (Effective - 10/15/2001)

Porcelanosa is concerned about the safety of its operations and about providing all employees with a safe working environment. The health and safety of all of our employees is of prime concern to everyone in the Company. Clearly, the possession, distribution, sale, purchase, and/or use of drugs and alcohol in the workplace are contrary to our concern for the health, safety and well being of all Company personnel. It is the Company policy, therefore, that the possession, distribution, sale, purchase, and/or use of alcoholic beverages and controlled substances (illegal drugs) by employees during working hours, on Company property, and at work sites away from Company property is strictly prohibited. For the purposes of this policy, "working hours" include rest periods and meal periods.

The legal use of prescribed drugs, consistent with the prescribing doctor's instruction, is not prohibited. Also, the use of over-the-counter drugs is permitted. While these drugs may be legally obtained and used, many of them may cause a sleep-inducing or narcotic effect. If you are taking or anticipate taking any legal drugs that may affect your ability to perform your job, you must notify the Personnel Manager of the situation. Failure to do so may result in disciplinary action, up to and including termination.

If the Company has reason to suspect any employee of being under the influence of alcohol or drugs while on duty, or immediately prior to going on duty, or at the time the employee is involved in a work-related accident, that employee may be asked to submit to a urinalysis or a blood test, which will be conducted at a Company designated medical facility. Such examination and/or tests, when requested, will be a condition of continued employment. Should an employee refuse to submit to the requested examination or test, the employee will be subject to discipline, up to and including termination for insubordination.

The Company retains the right to search and inspect all Company owned property and premises, including common areas used by employees, to detect the presence of illegal drugs or alcohol. Company owned property includes, but is not limited to machinery, equipment, furniture, lockers, buildings, real estate, and vehicles. Such inspections may occur at any time, with or without notice. As a term and condition of continued employment, every employee is expected and required to fully cooperate with any search being conducted to detect the presence of illegal drugs and alcohol on Company property.

Any employee who is found to be using, possessing, selling, purchasing, and/or distributing, or under the influence of drugs or alcohol in violation of the terms of this policy will be subject to disciplinary action, up to and including termination. Additionally, the Company may refer such activities to appropriate law enforcement authorities for further action.

The purpose behind this policy is to try to minimize or eliminate health and safety risks to you, your fellow employees, customers, and visitors that may be caused by employee drug and/or alcohol use and to ensure the safety of all Company operations. This is a matter of great importance for each and every one of us and for this reason your fullest compliance and cooperation is expected.

Employee Signature                Date 10/17/01

QDE EXHIBIT

JDK7

EXHIBIT B

# PORCELANOSA
## 1301 S. State College Blvd. Suite E
## Anaheim, California 92806

Dear

Enclosed are applications for the employee benefits package.  Please fill out the applications and return them on the following dates:

| Applications: | Due Dates: |
|---|---|
| Medical Insurance Application | 09/28/2001 |
| Dental Insurance Application | |
| Life Insurance Application | |
| 401(k) Application  *Deanna* | |

It is important to have the applications return to us before the due dates so the applications can be processed before your effective dates for the benefits.

_____          09/10/01
Manager                                     Date

_____          09/10/01
Employee                                   Date

QDE EXHIBIT
JDK8

**EXHIBIT B**



PORCELANOSA LOS ANGELES INC.
(714) 772-3103
1301 S. STATE COLLEGE BLVD STE. E
ANAHEIM, CA 92806

13830

10-24-4684
1220

DATE 4/20/10v

PAY TO THE ORDER OF: Ryan Davis

$ 1,500.00

One thousand five hundred and 00/100                    DOLLARS

Wells Fargo Bank, N.A.
California
www.wellsfargo.com

FOR office furniture, product issue, loan payment

⑆013830⑆ ⑈122000247⑈ ⑉206394180⑈



QDE EXHIBIT
JDK9

EXHIBIT B

# KNOWN HANDWRITING AND SIGNATURES OF

# RYAN DAVIS

**EXHIBIT B**

AUG-05-2003  08:32        Porcelanosa LA                        FAX ...........

# Vacation/Personal Day Request Form

**Today's Date:**        11/21/03

**Employee Name:**       Ryan Davis

                                        DAYS NEEDED

**# Of Days Requested**      8 1/2              11/28/03 ✓
                                                12/1/03 ✓
**Actual Days Taken:**   From:      To:        12/2/03 ✓
                                                12/12/03 ✓
                                                12/22/03
                                                (12/26/03) NO
                          11/21/03              12/29/03 ✓
**Employee's Signature**     **Date**           12/30/03 ✓

                                        11/24/03
**Controller/Office Manager**            **Date**

                         11/24/03
**Josep Domingot**
**General Manager**

**Date Returned To Work:**   _____

                    11/26/03 Weds- ✓ok            TOTAL P.01



QDE EXHIBIT
RDK1

**EXHIBIT B**

FROM : PORCELANOSA-ACCOUNTING          PHONE NO. : 7147720953          Jul. 21 2003 01:42PM P1

## Vacation/Personal Day Request Form

Today's Date:          7/16/03

Employee Name:          Ryan Davis

# Of Days Requested          3

Actual Days Taken:          From: 8/4/03   To: 8/6/03

_____          7/16/03
Employee's Signature                 Date

_____          07/22/03
Controller/Office Manager            Date

_____   7/30/03
Josep Domingot
General Manager

Date Returned To Work:          _____

QDE EXHIBIT

RDK2

EXHIBIT B

FEB-03-2024   16:34        PORCELANOSA LA                    ʹˡˣˤˡˤˢˣˢˣˠ   · ˣˣˢ

# PORCELANOSA LOS ANGELES

## VACATION / SICK LEAVE
## REQUEST FORM

Employee Name: Rian Davis          Department: Sales

SS#: 521 - 53 - 7475          **OR**          Employee ID#: _____

I hereby request the following working day(s) off (i.e. Mon 1/1 – Wed 1/3)
7/2/04      7/6/04

The above day(s) off equals ___16a___ Vacation hour(s) to be deducted from my Vacation balance.

The above day(s) off equals _____ Sick hour(s) to be deducted from my Sick Leave balance.

Employee Signature: _____          Date: 6/25/04

Manager Approval: _Naomi Donaldson_          Date: 6-28-04

HR Manager Approval: _____          Date: _____

General Manager Approval: _____          Date: _____

(CIRCLE ONE)

Actual hours taken:          All   or   Portion

Amount of Hours submitted to Payroll _____

Date submitted to Payroll:      ___/___/___
                                   Date

Submitted By: _____
                 HR Manager

Payroll Received Date: _____
                            Date

Payroll Entered by: _____        _____
                        Name                Date

**Please return completed form to Human Resources for processing. Thank you.**

Revised 2/3/2004

TOTAL P.02



QDE EXHIBIT
**RDK3**

**EXHIBIT B**

## ACKNOWLEDGEMENT OF VACATION CREDIT

Due to an audit conducted by the Human Resources Department of Porcelanosa Los Angeles, it has been found that there was an error in the deduction of vacation hours during the 2003 year. Due to this error the company is providing a one time credit of vacation hours to those exempt employees affected by the deduction error. Please review the following statement and sign the acknowledgement.

I, Ryan Davis, do hereby acknowledge that I am receiving a total of 8 vacation hours that was deducted incorrectly during the 2003 calendar year. I also understand that this is an accrued benefit and I am eligible to take these vacation hours at any time. I also understand that at time of separation from the company for any reason, I will be paid out any untaken hours from the 8 hour credit balance in addition to any vacation hours currently accrued.

I clearly understand the above statement and I sign this acknowledgement on my own free will and not under any type of duress.

EMPLOYEE NAME (PRINT): _Ryan Davis_

EMPLOYEE SIGNATURE: _____   DATE: 5/8/04

AUTHORIZED SIGNATURE OF
GENERAL MANAGER: _____   DATE: 3/18/04

NOTE:   Upon execution of this agreement, submit it to Human Resources for insertion in your personnel file.

QDE EXHIBIT
**RDK4**

**EXHIBIT B**

Porcelanosa Los Angeles - Employee Handbook

## TO BE SIGNED BY NEWLY HIRED OR CURRENT EMPLOYEE

## PORCELANOSA LOS ANGELES, INC.

## EMPLOYEE HANDBOOK

## ACKNOWLEDGMENT OF UNDERSTANDING

I acknowledge receipt of the PORCELANOSA-LA's Employee Handbook revised August 2003, containing policies and procedures of the Company as well as outlining my privileges and obligations. I understand and agree to read and comply with the policies, practices and regulations contained in the Handbook as well as any other company policies, practices and regulations. I understand that except for the "at-will" nature of my employment, all other rules, policies, and benefits contained in this Employee Handbook and other related documents may be amended, modified, discontinued or eliminated at any time.

I further understand and agree that my employment with PORCELANOSA-LA, and any of its related entities (referred to as the "Company") is for an unspecified term and is based upon mutual consent and may be terminated at will by either party. Therefore, my employment and compensation may be terminated by the Company or me "at will" at any time, for any or for no reason, with or without cause or prior notice. Additionally, I understand and agree that the at-will nature of my employment relationship with The Company means that the terms of my employment at the Company, including but not limited to promotion, demotion, discipline, transfer, compensation, benefits, duties and location of work, may be changed by the Company at any time, with or without notice, and for any or for no reason. Although other terms or conditions of employment may change, this at-will aspect of my employment relationship will remain in effect throughout my employment with the Company, and cannot be changed, modified, amended, or rescinded except by an individual written employment agreement signed by the General Manager of the Company and me. I also understand and agree that nothing in the employee handbook or the Company' discretionary use of corrective discipline creates any express or implied contract to the contrary and that this employee handbook is not a contract of employment. Accordingly, I will not interpret this employee handbook in any way that will create any expressed or implied contractual rights between the Company and me. I understand and agree that any verbal or written representations by anyone to the contrary are invalid and should not be relied upon by anyone. This at-will nature of my employment sets forth the entire agreement on this subject and supersedes any prior oral or written understandings or statements.

I HAVE CAREFULLY READ THIS ACKNOWLEDGEMENT AND I AGREE TO THE ABOVE CONDITIONS OF EMPLOYMENT.

EMPLOYEE NAME (PRINT): Rual Davis

EMPLOYEE SIGNATURE: _____ DATE: 10/3/03

AUTHORIZED SIGNATURE OF
COMPANY MANAGER: _____ DATE: 10/20/03

NOTE:   Upon completion of this acknowledgment sheet, remove it from the remainder of the Employee Handbook and submit it to Human Resources for insertion in yo personnel file.

QDE EXHIBIT

RDK5

EXHIBIT B

# PORCELANOSA LOS ANGELES, INC.
## COMPANY PROPERTY RETURN AGREEMENT

I, the undersigned employee, have received the following items from my employer:

Porcelanosa Los Angeles, Inc.
Employer

(List uniforms, equipment or tools below, including approximate current value.)

1. Dell Laptop Computer and carrier case- *LAPTOP ONLY*    $ 950.00

2. Cell Phone and Headset    $ 90.00    *USE OF OWN CELL PHONE*

3. Sample Briefcase    $ 60.00

4. Papers    $ 40.00

5. P-Touch Machines    $ 50.00

6. Sample Boards and other loose samples

7. Employee Handbook, product catalogs, manuals

8. Customer lists, pricing lists, computer disks, office keys

If I quit my employment, I agree to return all of the above items by my final day of employment. If my employer terminates my employment, I agree to return all of the above items at the time my employment is terminated. I further agree to return any or all of the above items at any other time my employer so requests.

I acknowledge that all items listed above remain the sole property of Porcelanosa Los Angeles.

_____
Employee's Name

_____    7/14/04
Employee's Signature    Date



QDE EXHIBIT

RDK6

**EXHIBIT B**

# Final Paycheck Acknowledgment

I, the undersigned recipient, have received my final paycheck from:

Porcelanosa Los Angeles
Company

The total amount of the paycheck is:    $ 928.80

Paycheck amount represents:

Wages                                    $ 369.12
Accrued Vacation Pay                     $ 559.68
Other _____                    $ _____
      _____                    $ _____
      _____                    $ _____
      _____                    $ _____
      _____                    $ _____

Deductions
   Medical Insurance Deduction           $ 50.25
   Dental Insurance Deduction            $ 5.00
   Child Support Garnishment             $ 338.90
   _____                       $ _____
   _____                       $ _____
   _____                       $ _____
   _____                       $ _____

To the best of my knowledge, there is no additional money owed to me by the company at the present time.

RYAN DAVIS
Name of Recipient

_____                  _7/20/0⁴_____
Signature of Recipient                    Date

_____                  _7/20/0⁴_____
Signature of Person Issuing Final Paycheck   Date

QDE EXHIBIT

RDK7

EXHIBIT B

# PORCELANOSA

## Ryan Commissions 2002:

**Territory:**
Colorado State less the following cities (S-W Colorado Triangle): Alamosa, South Fork, Pagosa Springs, Durango, Cortez, Mountain Village, Montrose and Grand Junction.

**Objective:**
$300,000.00/ 1st year (2002)

| | |
|---|---|
| Feb: | $4,500.00 |
| Mar: | $12,500.00 |
| Apr: | $24,500.00 |
| May: | $35,000.00 |
| Jun: | $34,500.00 |
| Jul. | $36,000.00 |
| Aug: | $28,000.00 |
| Sep: | $32,000.00 |
| Oct: | $36,000.00 |
| Nov | $36,000.00 |
| Dec: | $21,000.00 |

**Commissions:**

* 0 0060% from the first $$ gross sales.
* 0.013% from the first $$ gross sales new customers up to 5 months.
* Special Commission:
  Business with Apache Stone works for the Etkin project will receive 3% commission for all the project included Gama Décor, L'antic Colonial and System Pool. (0.013% as a new customer is not included in this special commission).
* All projects over $500,000/per project, you will receive a 2% commission.

## Ryan Bonus 2002:

Depending:
* Performance – 20%
* Accomplishments of own objectives – 50%
* Add 20 new customers this year to Porcelanosas customer data base – 30%

Bonus:
* 1 month salary.
* Accomplishing twice the objective you will receive 2 months salary.

Ryan A. Davis

Date:
2/11/2002

Josep Domingot
General Manager

Date: 2/11/2002

QDE EXHIBIT

RDK8

PORCELANOSA
EUROPEAN CERAMIC DESIGN

VENIS
CERAMICA DELUXE

GAMA-DECOR
by PORCELANOSA

SYSTEM-POOL
by PORCELANOSA

**EXHIBIT B**

## Notice To Employee As To Change In Relationship

Name <u>Ryan Davis</u>                              Social Security # ____-__-____

Your employment status has changed for the reason checked below:

❑ Voluntary Resignation effective:          ___/___/___
                                                                          (date)

❑ Voluntary Termination effective:          ___/___/___
                                                                          (date)

❑ Layoff effective:                                   ___/___/___
                                                                          (date)

☒ Involuntary Discharge effective:          07/20/2004
                                                                          (date)

❑ Refusal to accept available work effective:  ___/___/___
                                                                                      (date)

❑ Change in status from employee to independent contractor, effective:  ___/___/___
                                                                                                                    (date)

Comments:

Ryan is being terminated for a conflict of interest.  The conflict of interest is due to his personal involvement with another tile company while working for Porcelanosa Los Angeles.  Ryan has not disclosed the conflict of interest to the company.  The conflict of interest was discovered by an investigation conducted by the company over the last month.

_____                    _____
Supervisor's Signature                                               Company

Date: 7/20/04

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Notice Acknowledgment:**

I received a copy of this notice on  7/20/04

_____                    _____
(Signed)                                                                   (date)   7/20/04

QDE EXHIBIT
RDK9

**EXHIBIT B**

# PORCELANOSA

## EMPLOYEE MANUAL – JULY 1999
### AMENDEMENT – Alcohol and Drugs (Effective - 10/15/2001)

Porcelanosa is concerned about the safety of its operations and about providing all employees with a safe working environment. The health and safety of all of our employees is of prime concern to everyone in the Company. Clearly, the possession, distribution, sale, purchase, and/or use of drugs and alcohol in the workplace are contrary to our concern for the health, safety and well being of all Company personnel. It is the Company policy, therefore, that the possession, distribution, sale, purchase, and/or use of alcoholic beverages and controlled substances (illegal drugs) by employees during working hours, on Company property, and at work sites away from Company property is strictly prohibited. For the purposes of this policy, "working hours" include rest periods and meal periods.

The legal use of prescribed drugs, consistent with the prescribing doctor's instruction, is not prohibited. Also, the use of over-the-counter drugs is permitted. While these drugs may be legally obtained and used, many of them may cause a sleep-inducing or narcotic effect. If you are taking or anticipate taking any legal drugs that may affect your ability to perform your job, you must notify the Personnel Manager of the situation. Failure to do so may result in disciplinary action, up to and including termination.

If the Company has reason to suspect any employee of being under the influence of alcohol or drugs while on duty, or immediately prior to going on duty, or at the time the employee is involved in a work-related accident, that employee may be asked to submit to a urinalysis or a blood test, which will be conducted at a Company designated medical facility. Such examination and/or tests, when requested, will be a condition of continued employment. Should an employee refuse to submit to the requested examination or test, the employee will be subject to discipline, up to and including termination for insubordination.

The Company retains the right to search and inspect all Company owned property and premises, including common areas used by employees, to detect the presence of illegal drugs or alcohol. Company owned property includes, but is not limited to machinery, equipment, furniture, lockers, buildings, real estate, and vehicles. Such inspections may occur at any time, with or without notice. As a term and condition of continued employment, every employee is expected and required to fully cooperate with any search being conducted to detect the presence of illegal drugs and alcohol on Company property.

Any employee who is found to be using, possessing, selling, purchasing, and/or distributing, or under the influence of drugs or alcohol in violation of the terms of this policy will be subject to disciplinary action, up to and including termination. Additionally, the Company may refer such activities to appropriate law enforcement authorities for further action.

The purpose behind this policy is to try to minimize or eliminate health and safety risks to you, your fellow employees, customers, and visitors that may be caused by employee drug and/or alcohol use and to ensure the safety of all Company operations. This is a matter of great importance for each and every one of us and for this reason your fullest compliance and cooperation is expected.

_____
**Employee Signature**

2/6/02
**Date**

QDE EXHIBIT

**RDK10**

EXHIBIT B

Certain rule violations are so serious that they could result in your immediate termination from the job, however, we may choose at our discretion to utilize forms of corrective discipline that are less severe than termination in certain cases. Examples of less severe forms of discipline include verbal counseling, written warnings, and finally disciplinary warnings. Repeated violations cannot and will not be tolerated.

We pride ourselves on safety. Our Company goal is to have no work-related injuries. But if your are injured, we expect you to report it immediately to the Personnel Manager or another member of management. Likewise, if you observe an unsafe work condition, report it immediately.

_____          2/5/02
Employee Signature               Date



QDE EXHIBIT
RDK 11

**EXHIBIT B**

22. Other or related violations of the rules and regulations of the Company.

The Foregoing list is not intended to be all-inclusive, but to serve as a guideline of the types of behaviors that are not acceptable at Porcelanosa. No, list, regardless of how extensive it may be, can take the place of common sense and good judgement in the observance of proper standards of conduct.

_____     2/5/02
Employee Signature                         Date

QDE EXHIBIT
RD K12

EXHIBIT B

3. Physical intimidation or interference with an individual's normal work movement based on that individual's race, age, color, or national origin.

If you believe that you have been the subject of harassment, you should report the situation immediately to the Personnel Manager. If for any reason you feel uncomfortable discussing the situation with this individual, you should report the situation to the Vice President of Operations or to any other management official with whom you feel comfortable. An employee of agent of the Company who has been found by the Company, after appropriate investigation, to have harassed another employee will be subject to appropriate disciplinary action up to and including termination.

| | |
|---|---|
| Employee Signature | Date |

QDE EXHIBIT

RDK13

**EXHIBIT B**

# Form W-4 (2002)

**Purpose.** Complete Form W-4 so your employer can withhold the correct Federal income tax from your pay. Because your tax situation may change, you may want to refigure your withholding each year.

**Exemption from withholding.** If you are exempt, complete only lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2002 expires February 16, 2003. See Pub. 505, Tax Withholding and Estimated Tax.

**Note:** *You cannot claim exemption from withholding if (a) your income exceeds $750 and includes more than $250 of unearned income (e.g., interest and dividends) and (b) another person can claim you as a dependent on their tax return.*

**Basic instructions.** If you are not exempt, complete the Personal Allowances Worksheet below. The worksheets on page 2 adjust your withholding allowances based on itemized deductions, certain credits, adjustments to

income, or two-earner/two-job situations Complete all worksheets that apply. However, you may claim fewer (or zero) allowances.

**Head of household.** Generally, you may claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals. See line E above.

**Tax credits.** You can take projected tax credits into account in figuring your allowable number of withholding allowances. Credits for child or dependent care expenses and the child tax credit may be claimed using the Personal Allowances Worksheet below See Pub. 919, How Do I Adjust My Tax Withholding? for information on converting your other credits into withholding allowances

**Nonwage income.** If you have a large amount of nonwage income, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you may owe additional tax.

**Two earners/two jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one Form W-4 Your withholding usually will be most accurate when all allowances are claimed on the Form W-4 for the highest paying job and zero allowances are claimed on the others.

**Nonresident alien.** If you are a nonresident alien, see the Instructions for Form 8233 before completing this Form W-4.

**Check your withholding.** After your Form W-4 takes effect, use Pub. 919 to see how the dollar amount you are having withheld compares to your projected total tax for 2002 See Pub. 919, especially if you used the Two-Earner/Two-Job Worksheet on page 2 and your earnings exceed $125,000 (Single) or $175,000 (Married).

**Recent name change?** If your name on line 1 differs from that shown on your social security card, call 1-800-772-1213 for a new social security card

---

**Personal Allowances Worksheet (Keep for your records.)**

A  Enter "1" for yourself if no one else can claim you as a dependent . . . . . . . . . . . . A ____

B  Enter "1" if:
- You are single and have only one job; or
- You are married, have only one job, and your spouse does not work; or
- Your wages from a second job or your spouse's wages (or the total of both) are $1,000 or less.  } . . . B ____

C  Enter "1" for your spouse. But, you may choose to enter "-0-" if you are married and have either a working spouse or more than one job. (Entering "-0-" may help you avoid having too little tax withheld.) . . . . . . C ____

D  Enter number of dependents (other than your spouse or yourself) you will claim on your tax return . . . D ____

E  Enter "1" if you will file as head of household on your tax return (see conditions under Head of household above) . E ____

F  Enter "1" if you have at least $1,500 of child or dependent care expenses for which you plan to claim a credit . . F ____
   (Note: *Do not include child support payments See Pub. 503, Child and Dependent Care Expenses, for details.*)

G  Child Tax Credit (including additional child tax credit):
- If your total income will be between $15,000 and $42,000 ($20,000 and $65,000 if married), enter "1" for each eligible child plus 1 additional if you have three to five eligible children or 2 additional if you have six or more eligible children.
- If your total income will be between $42,000 and $80,000 ($65,000 and $115,000 if married), enter "1" if you have one or two eligible children, "2" if you have three eligible children, "3" if you have four eligible children, or "4" if you have five or more eligible children. . . . G ____

H  Add lines A through G and enter total here. Note: *This may be different from the number of exemptions you claim on your tax return.*  ▶ H ____

For accuracy, complete all worksheets that apply.
- If you plan to itemize or claim adjustments to income and want to reduce your withholding, see the Deductions and Adjustments Worksheet on page 2.
- If you have more than one job or are married and you and your spouse both work and the combined earnings from all jobs exceed $35,000, see the Two-Earner/Two-Job Worksheet on page 2 to avoid having too little tax withheld.
- If neither of the above situations applies, stop here and enter the number from line H on line 5 of Form W-4 below.

- - - - - - - - - - - - - - - - -  Cut here and give Form W-4 to your employer. Keep the top part for your records.  - - - - - - - - - - - - - - - - -

---

| Form **W-4**<br>Department of the Treasury<br>Internal Revenue Service | **Employee's Withholding Allowance Certificate**<br>▶ For Privacy Act and Paperwork Reduction Act Notice, see page 2. | OMB No. 1545-0010 |
|---|---|---|
| | | **2002** |

| 1  Type or print your first name and middle initial | Last name | 2  Your social security number |
|---|---|---|
| RYAN   A | DAVIS | 521  38  7475 |

| Home address (number and street or rural route) | 3  ☒ Single  ☐ Married  ☐ Married, but withhold at higher Single rate<br>Note: *If married, but legally separated, or spouse is a nonresident alien, check the "Single" box.* |
|---|---|
| 14860 PECOS ST | |
| City or town, state, and ZIP code | 4  If your last name differs from that shown on your social security card, check here. You must call 1-800-772-1213 for a new card. ▶ ☐ |
| BROOMFIELD COLORADO 80020 | |

5  Total number of allowances you are claiming (from line H above or from the applicable worksheet on page 2) . . . | 5 | Ø |

6  Additional amount, if any, you want withheld from each paycheck . . . . . . . . . . | 6 | $ |

7  I claim exemption from withholding for 2002, and I certify that I meet both of the following conditions for exemption:
- Last year I had a right to a refund of all Federal income tax withheld because I had no tax liability and
- This year I expect a refund of all Federal income tax withheld because I expect to have no tax liability.
If you meet both conditions, write "Exempt" here . . . . . . . . . . . . . ▶ | 7 |

Under penalties of perjury, I certify that I am entitled to the number of withholding allowances claimed on this certificate, or I am entitled to claim exempt status.

Employee's signature
(Form is not valid unless you sign it.) ▶ _Ryan Davis_        Date ▶ 2/5/02

| 8  Employer's name and address (Employer: Complete lines 8 and 10 only if sending to the IRS.) | 9  Office code (optional) | 10  Employer Id |
|---|---|---|

Cat. No. 10220Q

**QDE EXHIBIT**

**RDK14**

**EXHIBIT B**

FROM : PORCELANOSA-ACCOUNTING          PHONE NO. : 7147720993          Jan. 15 2002 11:45AM P3

**FORMER EMPLOYERS** (LIST BELOW LAST THREE EMPLOYERS, STARTING WITH LAST ONE FIRST)

| DATE MONTH AND YEAR | NAME AND ADDRESS OF EMPLOYER | SALARY | POSITION | REASON FOR LEAVING |
|---|---|---|---|---|
| FROM 3/01 TO 12/01 | COASTAL FLOORING | 40,000.00 | OPERATIONS & WARRANTY MANAGER | |
| FROM 7/00 TO 3/01 | W.C. TINGLE | 25,000.00 + COMM | REGIONAL SALE MANG.R | |
| FROM SUMMERS TO | WAGNER FLOORING | 14.00 HR | WAREHOUSE MANAGE | |
| FROM 95 TO 11/98 | U.S. ARMY | 800.00 MONTH | TANK GUNNER | |

WHICH OF THESE JOBS DID YOU LIKE BEST?

WHAT DID YOU LIKE MOST ABOUT THIS JOB?

**REFERENCES:** GIVE THE NAMES OF THREE PERSONS NOT RELATED TO YOU, WHOM YOU HAVE KNOWN AT LEAST ONE YEAR.

| | NAME | ADDRESS | BUSINESS | YEARS ACQUAINTED |
|---|---|---|---|---|
| 1 | JOE ROLANDO | | COASTAL FLOORING | 2 |
| 2 | JARED DeCASTRO | 1335 N 133 CIR UNIT D | ARLINS FLOORING | 14 |
| 3 | SCOTT CROFT | 155 AZTEK ST UNIT C | MEDALION FLOORING | 5 |

THE FOLLOWING STATEMENT APPLIES IN: MARYLAND & MASSACHUSETTS. (Fill in name of state)
IT IS UNLAWFUL IN THE STATE OF _____ TO REQUIRE OR ADMINISTER A LIE DETECTOR TEST AS A
CONDITION OF EMPLOYMENT OR CONTINUED EMPLOYMENT. AN EMPLOYER WHO VIOLATES THIS LAW SHALL BE
SUBJECT TO CRIMINAL PENALTIES AND CIVIL LIABILITY.

Signature of Applicant

IN CASE OF EMERGENCY NOTIFY  Nicole Davis                                      303.455.2976
                             NAME                     ADDRESS                  PHONE NO.

"I CERTIFY THAT ALL THE INFORMATION SUBMITTED BY ME ON THIS APPLICATION IS TRUE AND COMPLETE, AND I UNDERSTAND THAT IF
ANY FALSE INFORMATION, OMISSIONS, OR MISREPRESENTATIONS ARE DISCOVERED, MY APPLICATION MAY BE REJECTED AND, IF I AM
EMPLOYED, MY EMPLOYMENT MAY BE TERMINATED AT ANY TIME.
IN CONSIDERATION OF MY EMPLOYMENT, I AGREE TO CONFORM TO THE COMPANY'S RULES AND REGULATIONS, AND I AGREE THAT MY
EMPLOYMENT AND COMPENSATION CAN BE TERMINATED, WITH OR WITHOUT CAUSE, AND WITH OR WITHOUT NOTICE, AT ANY TIME, AT
EITHER MY OR THE COMPANY'S OPTION. I ALSO UNDERSTAND AND AGREE THAT THE TERMS AND CONDITIONS OF MY EMPLOYMENT
MAY BE CHANGED, WITH OR WITHOUT CAUSE, AND WITH OR WITHOUT NOTICE, AT ANY TIME BY THE COMPANY. I UNDERSTAND THAT
NO COMPANY REPRESENTATIVE, OTHER THAN IT'S PRESIDENT, AND THEN ONLY WHEN IN WRITING AND SIGNED BY THE PRESIDENT,
HAS ANY AUTHORITY TO ENTER INTO ANY AGREEMENT FOR EMPLOYMENT FOR ANY SPECIFIC PERIOD OF TIME, OR TO MAKE ANY
AGREEMENT CONTRARY TO THE FOREGOING."

DATE                      SIGNATURE

**DO NOT WRITE BELOW THIS LINE**

INTERVIEWED BY                                                    DATE

REMARKS:

NEATNESS                              ABILITY

HIRED: ☐ Yes ☐ No          POSITION                    DEPT.

SALARY/WAGE                           DATE REPORTING TO WORK

APPROVED: 1. _____ 2. _____ 3. _____
          EMPLOYMENT MANAGER      DEPT. HEAD              GENERAL MANAGER

This form has been designed to strictly comply with State and Federal fair employment practice laws prohibiting employment discrimination. This Application
for Employment Form is sold for general use throughout the United States. TOPS assumes no responsibility for the inclusion in said form of any questions
which, when asked by the Employer of the Job Applicant, may violate State and/or Federal Law.

QDE EXHIBIT

RDK15

EXHIBIT B

I agree that I will not disclose any of the above mentioned trade secrets, directly or indirectly, or use them in any way, either during the term of my employment or at any time thereafter, except as required in the course of my employment with the company.

I further understand that I am an at-will employee of this company and that this agreement is not to be construed as constituting a promise of continued employment.

I HAVE CAREFULLY READ THIS CONFIDENTIALITY AGREEMENT AND I AGREE TO THE ABOVE CONDITIONS OF EMPLOYMENT.

EMPLOYEE NAME (PRINT): _Ryan Davis_ _____

EMPLOYEE SIGNATURE: _____ DATE: _6/29/04_

AUTHORIZED SIGNATURE OF
GENERAL MANAGER: _____ DATE: _____

NOTE: Upon execution of this agreement, submit it to Human Resources for insertion in your personnel file.

QDE EXHIBIT

RDK16

EXHIBIT B

I further understand that I am an at-will employee of this company and that this agreement is not to be construed as constituting a promise of continued employment.

I HAVE CAREFULLY READ THIS CONFLICT OF INTEREST AGREEMENT AND I AGREE TO THE ABOVE CONDITIONS OF EMPLOYMENT.

EMPLOYEE NAME (PRINT): Ryan Davis

EMPLOYEE SIGNATURE: _____   DATE: 6/29/04

AUTHORIZED SIGNATURE OF
GENERAL MANAGER: _____   DATE: _____

NOTE: Upon execution of this agreement, submit it to Human Resources for insertion in your personnel file.



QDE EXHIBIT

RDK17

EXHIBIT B

DETAILED REPORT

EXAMINATION OF QUESTIONED SIGNATURES OF JACK HANDLEY
and JOSEPH DOMINGOT

BASIS AND REASONS FOR EXPERT OPINION

<u>EXAMINATION REQUESTED</u>

This forensic document examiner was asked to conduct an examination of one (1) Jack Handley signature on a signature page of a Distribution Agreement, purportedly signed by Jack Handley (Q1) and a signature page of an Exclusivity Agreement dated 7/29/04, purportedly signed by Joseph Domingot (Q2), to determine authenticity of the questioned signatures by comparing the questioned signatures to respective known signatures of Jack Handley and Joseph Domingot.

<u>EXHIBITS</u>

Documents examined were both received in person and transmitted via e-mail and printed on an HP printer.  The documents included ten (10) documents with purported known handwriting and signatures of Jack Handley, labeled herein as JHK1 through JHK10; nine (9) documents with purported known signatures of Joseph Domingot, labeled herein as JDK1 through JDK9; seventeen (17) documents with purported known handwriting and signatures of Ryan Davis, labeled herein a RDK1 through RDK17; and two (2) pages with questioned signatures, described above. I find no necessity to describe each document examined as they have been clearly labeled for reference and identification.

<u>OBSERVATIONS, DESCRIPTIONS AND/OR LIMITATIONS</u>

The identification of any signature or handwriting is based on the agreement, without unexplainable difference, of the handwriting characteristics displayed.  These characteristics include the form of the letters, the beginning, connecting, and ending strokes, the proportions of letters, both inter-letter and intra-letter, the slope, size, and curvature of the writing and/or printing, the spacing and arrangement, the skill of the writer, and line quality.  The alignment, positioning and outstanding significant features are other factors used to analyze, compare and evaluate.  The elimination of an author is based on a lack of some or all of the above-noted comparisons.

Handwriting is not simply "hand" writing but "brain" writing. Handwriting is formed by repeated habits of writing by the author, which are created by neural pathways established in the brain.  These neural pathways control muscular and nerve movement for writing, whether the writing is executed by hand, foot, or mouth.  An examination of handwriting includes establishing patterns of writing habits to help identify the author.

The documents examined included both originals and copies. The quality of the questioned and known handwriting and signatures was sufficient for examination.

**EXHIBIT B**

## METHODOLOGY

The specimens submitted as the known samples of handwriting and signatures were compared one to the respective others to verify the authorship of each respective sample and to determine the natural variation in the regular normal design of the respective handwriting and signatures. The patterns of writing were verified by using scientific instruments such as a stereomicroscope, handheld magnifying loupes, metric measuring devices, and by enlarging the signatures 200% for easier examination. The handwriting characteristics displayed in the known handwriting and signatures are similar one to the respective others.

After verifying the known handwriting and signatures, a meticulous examination and comparison of the questioned signatures to the respective known handwriting and signatures was conducted to determine similarities and differences.

The scientific methodology used in this examination consists of the "ACE-V" method, which means "Analyze, Compare, Evaluate and Verify," the same method reportedly used by the FBI, the U.S. Treasury Department, and the U.S. Postal Service in their questioned document laboratories. This method was also accepted and affirmed by the District of Columbia Court of Appeals in Case No. 08-CF-1361, *Pettus v. United States.*

## EXAMINATION OF THE QUESTIONED JACK HANDLEY SIGNATURE

The Jack Handley signature on the Q1 document was enlarged and examined scientifically under magnification and in a side-by-side comparison to the known Jack Handley handwriting and signature specimens. Letter height, letter formation, beginning, connecting and ending strokes, angles, slant and line quality were examined and verified under magnification. Significant dissimilarities of the handwriting characteristics displayed in the questioned Jack Handley signature were revealed when compared to the known handwriting and signatures.

The Jack Handley signature on the questioned document Q1 was made to resemble Jack Handley's signature, but is dissimilar, indicating forgery. Some of the differences in the questioned signature include the following:

1. The 'J' is missing a large ink glob in the return stroke of the loop (ink globs are an indicator of identity);
2. the stroke at the right of the 'a' ends in a downward stroke, rather than an upstroke toward the 'k', as seen in the known signatures;
3. the right side of the 'k' is a single diagonal line heading northeast. The right side of the known 'k's are created with a continuing stroke from the left side or with a 'c' formation next to the left side of the 'k';
4. the left downstroke of the 'H' appears to have been made with two stops in the process of drawing the line (1/3 of the way down and again at the cross bar of the 'H');
5. the diagonal stroke in the inside of the 'H' is a separate stroke and not a continuation of the left downstroke as seen in the known signatures;
6. appearance of a pen left (stop/start) near the bottom of the right down stroke;
7. there is too much space between the lower left loop of the 'd' and the right loop of the 'd', unlike the known signatures;

6

**EXHIBIT B**

8. the tops of the loops of the 'd' and 'l' are too even compared to the known signatures;

9. missing ink glob at the top of the 'l'; (ink glob at the top of the 'l's and most of the 'd's in the known signatures);

10. the top of the 'y' is nonexistent – the 'l' extends to create partial loop to the right, that is not connected to the lower 'y' loop;

11. The loop at the bottom right of the signature is simply a circle and not connected to anything;

12. there is small, separate mark at the upper right of the circle that is not connected to anything;

13. missing large ink glob on return stroke of loop that is supposed to be the 'y';

14. tremulous writing, as seen in slow, methodical tracing;

My hypothesis was formed without bias as to authorship of the Jack Handley signature on the questioned document. My examination revealed significant dissimilarities in the questioned Jack Handley signature when compared to the known Jack Handley signatures. My conclusion was logical and based on results of the above described methodology, analysis, comparison and evaluation.

## EXAMINATION OF THE QUESTIONED JOSEPH DOMINGOT SIGNATURE

The Joseph Domingot signature on the Q2 document was enlarged and examined scientifically under magnification and in a side-by-side comparison to the known Joseph Domingot signature specimens. Letter height, letter formation, beginning, connecting and ending strokes, angles, slant and line quality were examined and verified under magnification. Significant dissimilarities of the handwriting characteristics displayed in the questioned Joseph Domingot signature were revealed when compared to the known signatures.

The Joseph Domingot signature on the questioned document Q2 appears to have been made in an attempt to resemble Joseph Domingot's signature, but is dramatically dissimilar, indicating forgery. Some of the differences in the questioned signature include the following:

15. the questioned Joseph Domingot signature is not written or formed in any way like the known signatures;

16. the signature is written too far left on the signature line;

17. the signature is proportionately too small compared to the known signatures;

18. the first letter in the name is formed as an individual 'a' type formation, unlike the known signatures that begin near the middle of the name as a diagonal southwesterly stroke;

19. middle zone letters are too short compared to the known signatures;

20. middle zone letters have wide tee-pee formation rather than retraced tops as seen in the known signatures;

21. multiple stops and starts in the signature (in the creation of the stem of the first letter; at the end of the checkmark formation that is supposed to be connected to the first letter; after the beginning of the middle zone start; after the 'v' shape; after the second 'v' shape; at the end of the second tall stroke toward the right of the name;

22. the top of the checkmark formation is taller than the next tall letter, unlike the known signatures;

7

*Section 3 - Detailed Report - Basis for Opinion*

**EXHIBIT B**

23. there is a small, unattached stroke between the two tall middle letters, unlike the known signatures;
24. very small loop at the top of the 'S' formation, unlike the known signatures;
25. the downstroke on the 'S' formation is convex rather than concave, as seen in the known signatures;
26. the bottom right of the 'S' formation is disconnected from the rest of the signature, unlike the known signatures;
27. the 't' at the end of the name is formed as a loop, unlike the known signatures;
28. the crossbar of the 't' has too great of an angle when compared to the known signatures.

My hypothesis was formed without bias as to authorship of the Joseph Domingot signature on the questioned document. My examination revealed remarkable and significant dissimilarities in the questioned Joseph Domingot signature when compared to the known Joseph Domingot signatures. My conclusion was logical and based on results of the above described methodology, analysis, comparison and evaluation.

## EXAMINATION OF THE HANDWRITING AND SIGNATURES OF RYAN DAVIS

The Ryan Davis handwriting and signatures on the RDK documents were enlarged and examined scientifically under magnification and in a side-by-side comparison to the questioned Jack Handley and Joseph Domingot signatures. Letter height, letter formation, beginning, connecting and ending strokes, angles, slant and line quality were examined and verified under magnification. Significant similarities of the handwriting characteristics displayed in the questioned handwriting were revealed when compared to the known Ryan Davis handwriting and signatures.

Some of the similarities found in the questioned handwriting when compared to the known Ryan Davis handwriting and signatures include the following:

1. the length of the loop and half-loop formations in the known Ryan Davis signatures are very similar in size to the questioned name of Jack Handley;
2. the height of the loop and half- loop formations in the known Ryan Davis signatures are very similar in size to the questioned name of Jack Handley;
3. the elongated shape of the loop and half-loop formations in the known Ryan Davis signatures are very similar in size to the questioned name of Jack Handley;
4. similar placement of both signatures on Q2;
5. similar lateral expansion of both signatures on Q2;
6. similar formation of numeral '2';
7. similar formation of numeral '9' (downstroke is longer than other numbers on both questioned and RDK documents;
8. similar formation of numeral '4' (downstroke extended in height and length in both questioned and RDK documents;
9. similar curve in lower part of slash marks between numbers in dates;
10. '0's have flat (rather than curved) left side in Q2 – commonly found in RDK documents.

8

**EXHIBIT B**

All tests were done with accepted scientific methodology, techniques, and scientific instruments, which helped to determine inauthenticity of the questioned signatures and eliminate authenticity of the documents.

## HISTORICAL PRECEDENCE

The leading forefathers of document examination in the USA agree that one significant difference in the fundamental structure of a writing compared to another is enough to preclude common authorship. *Handwriting Identification, Facts and Fundamentals,* Roy A. Huber and A.M. Headrick, CRC Press LLC, 1999, pp 50-51:

> [Ordway] Hilton stated: "It is a basic axiom of identification in document problems that a limited number of basic differences, even in the face of numerous strong similarities, are controlling and accurately establish nonidentity."

> [Wilson R.] Harrison made similar comments: "...the fundamental rule which admits of no exception when handwritings are being compared...is simple -- whatever features two specimens of handwriting may have in common, they cannot be considered to be of common authorship if they display but a single consistent dissimilarity in any feature which is fundamental to the structure of the handwriting, and whose presence is not capable of reasonable explanation."

> [James V.P.] Conway expressed the same theme when he wrote: "A series of fundamental agreements in identifying individualities is requisite to the conclusion that two writings were authored by the same person, whereas a single fundamental difference in an identifying individuality between two writings precludes the conclusion that they were executed by the same person."

and finally,

> [Albert S.] Osborn and others have generally agreed that despite numerous similarities in two sets of writings, a conclusion of identity cannot be made if there is one or more differences in fundamental features of the writings.

## CONCLUSION

An examination of each signature was completed and compared one to another with the following results:

Based on my scientific examination and a remarkable lack of agreement of the unique, identifiable characteristics in the questioned signatures, it is my professional expert opinion that:

1.   the Jack Handley signature on Q1 was not signed by Jack Handley. The Jack Handley signature on Q1 does not match the known signatures of Jack Handley, thereby revealing that someone did indeed forge the Jack Handley signature on the questioned document Q1;

9

*Section 3 - Detailed Report - Basis for Opinion*

**EXHIBIT B**

2.      the Joseph Domingot signature on Q2 was <u>not</u> signed by Joseph Domingot. The Joseph Domingot signature on Q2 does not match the known signatures of Joseph Domingot, thereby revealing that someone did indeed forge the Joseph Domigot signature on the questioned document Q2;

3.      it is highly probable that Ryan Davis was the author of the Jack Handley signature on the questioned document Q1;

4.      the dates on the questioned document Q2 were authored by Ryan Davis.

I have applied the generally accepted Questioned Document Examiner principles and methods reliable to the facts in this case.

I am willing to testify to facts herein stated in a court of law and I will provide to the Court exhibits to show that my testimony is based on sufficient facts or data and that my opinion is correct.

Respectfully submitted,

*Wendy Carlson*

Wendy Carlson
Forensic Document Examiner

State of Texas          )
                        )
County of Rockwall  )

On the ___ day of June, in the year 2015, before me, the undersigned, personally appeared Wendy Carlson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that she executed the instrument, and the statements herein are true.

MIKE MEAVE
My Commission Expires
June 27, 2017

Notary Public

10

*Section 3 - Detailed Report - Basis for Opinion*

**EXHIBIT B**

# LIST OF DISSIMILARITIES IN THE QUESTIONED SIGNATURES AND ENLARGED EXHIBITS

## Dissimilarities in the Questioned Jack Handley Signature

1. The 'J' is missing a large ink glob in the return stroke of the loop (ink globs are an indicator of identity);
2. the stroke at the right of the 'a' ends in a downward stroke, rather than an upstroke toward the 'k', as seen in the known signatures;
3. the right side of the 'k' is a single diagonal line heading northeast. The right side of the known 'k's are created with a continuing stroke from the left side or with a 'c' formation next to the left side of the 'k';
4. the left downstroke of the 'H' appears to have been made with two stops in the process of drawing the line (1/3 of the way down and again at the cross bar of the 'H');
5. the diagonal stroke in the inside of the 'H' is a separate stroke and not a continuation of the left downstroke as seen in the known signatures;
6. appearance of a pen left (stop/start) near the bottom of the right down stroke;
7. there is too much space between the lower left loop of the 'd' and the right loop of the 'd', unlike the known signatures;
8. the tops of the loops of the 'd' and 'l' are too even compared to the known signatures;
9. missing ink glob at the top of the 'l'; (ink glob at the top of the 'l's and most of the 'd's in the known signatures);
10. the top of the 'y' is nonexistent – the 'l' extends to create partial loop to the right, that is not connected to the lower 'y' loop;
11. The loop at the bottom right of the signature is simply a circle and not connected to anything;
12. there is small, separate mark at the upper right of the circle that is not connected to anything;
13. missing large ink glob on return stroke of loop that is supposed to be the 'y';
14. tremulous writing, as seen in tracing or slow, methodical freehand drawing;

## Dissimilarities in the Questioned Joseph Domingot Signature

15. the questioned Joseph Domingot signature is not written or formed in any way like the known signatures;
16. the signature is written too far left on the signature line;
17. the signature is proportionately too small compared to the known signatures;
18. the first letter in the name is formed as an individual 'a' type formation, unlike the known signatures that begin near the middle of the name as a diagonal southwesterly stroke;
19. middle zone letters are too short compared to the known signatures;
20. middle zone letters have wide tec-pee formation rather than retraced tops as seen in the known signatures;
21. multiple stops and starts in the signature (in the creation of the stem of the first letter; at the end of the checkmark formation that is supposed to be connected to the first

**EXHIBIT B**

letter; after the beginning of the middle zone start; after the 'v' shape; after the second 'v' shape; at the end of the second tall stroke toward the right of the name;

22. the top of the checkmark formation is taller than the next tall letter, unlike the known signatures;

23. there is a small, unattached stroke between the two tall middle letters, unlike the known signatures;

24. very small loop at the top of the 'S' formation, unlike the known signatures;

25. the downstroke on the 'S' formation is convex rather than concave, as seen in the known signatures;

26. the bottom right of the 'S' formation is disconnected from the rest of the signature, unlike the known signatures;

27. the 't' at the end of the name is formed as a loop, unlike the known signatures;

28. the crossbar of the 't' has too great of an angle when compared to the known signatures.

Similarities in the Questioned Signatures and Handwriting in Comparison to the Known
Ryan Davis Handwriting

1. the length of the loop and half-loop formations in the known Ryan Davis signatures are very similar in size to the questioned name of Jack Handley;

2. the height of the loop and half- loop formations in the known Ryan Davis signatures are very similar in size to the questioned name of Jack Handley;

3. the elongated shape of the loop and half-loop formations in the known Ryan Davis signatures are very similar in size to the questioned name of Jack Handley;

4. similar placement of both signatures on Q2;

5. similar lateral expansion of both signatures on Q2;

6. similar formation of numeral '2';

7. similar formation of numeral '9' (downstroke is longer than other numbers on both questioned and RDK documents;

8. similar formation of numeral '4' (downstroke extended in height and length in both questioned and RDK documents;

9. similar curve in lower part of slash marks between numbers in dates;

10. '0's have flat (rather than curved) left side in Q2 – commonly found in RDK documents.

12

**EXHIBIT B**

JHK6
ignature: _____          Date: _____

JHK7
Applicant

JHK8
EMPLOYEE

Q1
By: _____

JHK1

Signature

**Employee's signature**
Form is not valid
unless you sign it.) ▶

JHK2 Employer's name and address (Employer: Complete lines 8 and 10 only if sending to

JHK3                                                                9/6/00

Employee's Signature                    Date

JKK4          X                                                Signatu

JHK5                    EMPLOYEE

**EXHIBIT B**

INFINITE FLOORING & DESIGN CORP.
1070 West 124th Ave. Suite 100
Westminster Colorado 80234

By: _____   7-27-04
Name: Ryan A. Davis
Title: Chief Executive Officer

PORCELANOSA GROUP
1301 South State College Blvd.
Anaheim California 92806

By: _____   7/29/04
Name: Josep Domingot
Title: General Manager

Exclusivity
Agent

Q2

**EXHIBIT B**

JDK1

Jose Borjon

Employee's Name

IGNA

JDK2

SIGN

ANAC

DATE:

Employee's Printed Name

JDK3

Employee's Signature

report it immediately.

JDK4

Employee Signature

9/10/
Da

EXHIBIT B

JDK5

Employee Signature

observance of proper standards of co...

JDK6

Employee Signature

alcohol use and to ensure the safety of all (
importance for each and every one of us an
cooperation is expected.

JDK7

**Employee Signature**

10/17/

**Date**

Manager

JDK8

Employee

EXHIBIT B

...uthorized representative as of the date and year indicated above.

PORCELANOSA USA
COMPANY

By: _____

Authorized Representative

CREW TILE DISTRIBUTION
DISTRIBUTOR

By: _____

Authorized Representative

By: _____

Authorized Representative

Q1

EXHIBIT B

7-27-04        Q2

7/29/04        Q2

root

RDK6

7/14/04

RDK7

7/20/04

7/20/04        RDK9

RDK13

2/5/02

RDK1

11/28/03 ✓
12/1/03 ✓
12/2/03 ✓
12/12/03 ✓
12/22/03 ✓
12/26/03 NO ✓
12/29/03 ✓
12/30/03 ✓

6/29/04        RDK16

6/29/04        RDK17

EXHIBIT B

RDK1

RDK2

RDK3         Date

RDK4         DATE

RDK5

RDK6

RDK7

Ryan A. Davis

RDK8

RDK9

(Signed)

EXHIBIT B

RDK 10    Ryan Davis    2/6/02

RDK11    Ryan Davis    2/5/02

RDK12    Ryan Davis    2/5/02
Employee Signature    Date

RDK13    Ryan Davis    2/5/02

RDK14    Ryan Davis

e and address (Employer: Complete lines 8 and 10 only if sending to the IRS.)
AN EMPLOYER WHO VIOLATES THIS LAW OF

RDK15

Signature of Applicant

RDK16    DATE:

RDK17    DATE: 6

**EXHIBIT B**

# LEGAL DATA

### UNITED STATES v. JANET L. THORNTON

*Case No. 02-M-9150-01, decided January 24, 2003*

This issue is governed by Fed.R.Evid. 702, which states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. [This rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) and *Kumho Tire Co. Ltd. v. Carmichael* (1999).]

In *Daubert*, the court, focusing on the admissibility of scientific expert testimony, held that the trial judge has the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. In *Kumho Tire*, the court held that a trial judge's gatekeeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical and other specialized knowledge.

Among the studies cited by Mr. Hammond is a study by Professor Sargur Srihari on the individuality of handwriting. Using handwriting of 1500 individuals, his conclusions were that, using computer software, they were able to establish with a 98% confidence that the writer can be identified. Taking the results over the entire population, they were able to validate handwriting individuality with a 96% confidence. By considering finer features, Professor Srihari opined that they should be able to validate handwriting individuality with a near 100% confidence. A study by Dr. Moshe Kam indicates that professional document examiners had only a 6.5% error rate compared to an error rate of 38.3% for nonprofessionals. Dr. Kam concluded by stating that professional document examiners possess writer identification skills absent in the general population. Another study by Professor Kam indicated that professionals concluded that forgeries were genuine 0.49% of the time whereas laypersons did so 6.47% of the time. Professionals mistakenly concluded that genuine signatories were forgeries 7.05% of the time; laypersons did so 26.1% of the time. Another study by Jodi Sita, Brian Found and others found that forensic document examiners made errors in 3.4% of their opinions, while 19.1% of the control group gave erroneous opinions.

The above studies provide solid evidence that handwriting individuality can be validated with a very high degree of confidence, and that professional forensic document examiners have developed an expertise and training that allow them to correctly identify a person's handwriting with a much lower error rate than laypersons. On the other hand, the affidavit of Dr. Saks raises legitimate questions concerning the validity of these studies and the accuracy of handwriting identification in general.

However, in *Daubert*, the U.S. Supreme Court made it clear that "it would be unreasonable to conclude that the subject of scientific testimony must be known to a certainty; arguably, there are no certainties in science. . . . Science . . . represents a process for proposing and refining theoretical explanations about the world that are subject to further testing and refinement." It is sufficient if the proposed testimony can be supported by appropriate validation, i.e., good grounds, based on what is known.

**EXHIBIT B**

Texas:
3021 Ridge Road, Suite A-130
Rockwall, Texas 75032
Phone: (214) 458-6009
Fax: (303) 265-9087

Colorado:
1550 Larimer Street, Suite 251
Denver, Colorado 80202
Phone: (303) 330-8636
Fax: (303) 265-9087

# Wendy Carlson
## Expert Document Examiner
www.AmericasHandwritingExpert.com
ws.carlson@yahoo.com

**Forensic Document Examination Fee Schedule -**

*(Opinion released upon receipt of payment)*

| | |
|---|---|
| Initial Consultation - 1/2 hour. . . . . . . . . . . . . . . . . . . . . . . . | **No Charge** |
| Examination and Verbal Opinion . . *(per questioned signature, paid in advance)* | $300.00 |
| Upgrade from Verbal to Written Letter of Opinion *(already paid $300.00). . (per letter).* . . . . . . . . . . . . . . . . . . . | $275.00 |
| Upgrade to Rule 26 Compliant Letter of Opinion. . . . . . . . . . | $650.00 |
| Attorney Consultation *(hourly)* . . . . . . . . . . . . . . . . . . . . . . | $150.00 |
| Deposition Time *(per day, paid in advance)* . . . . . . . . . . *($500 scheduling fee will be retained upon notice of cancellation of deposition)* | $1,200.00 |
| Court Display Preparation *(hourly)* . . . . . . . . . . . . . . . . . . . | $75.00 |
| Appearance for Court, Arbitration or Mediation *(per day, must be paid in full upon scheduling) ($500 scheduling fee will be retained upon notice of cancellation)* | $1,200.00 |
| On-Site Inspection of Document *(hourly, plus expenses).* . . . . | $200.00 |
| Photography *(plus cost of development).* . . . . . . . . . . . . . . . | $100.00 |
| Overnight Mail *($35 fee).* . . . . . . . . . . . . . . . . . . . . . . . . . | $35.00 |
| Postage/Delivery Fee ($25). . . . . . . . . . . . . . . . . . . . . . . . . | $25.00 |
| **Travel:** | |
| Driving *(hourly, plus $.56 per mile).* . . . . . . . . . . . . . . . . . . | $50.00 |
| Flying *(hourly travel time, plus cost of ticket).* . . . . . . . . . . . | $50.00 |
| Lodging *(per night or actual cost)* . . . . . . . . . . . . . . . . . . . | $100.00 |
| Meals *(daily)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $50.00 |

15

*Section 6 - Compensation*

**EXHIBIT B**

# WENDY CARLSON
## Forensic Document Examiner
### Testimony List

I have been qualified and/or appointed by the Court and/or have testified as an Expert from 2008 -- 2015 in the following cases:

June 3, 2015
Case Number 14 CVS 10429
In the General Court of Justice
Superior Court Division
Guilford County, North Carolina
Deposition

Case Name:  David Colin, in his capacity as Administrator of the
Estate of Bronwyne C. Bowra, deceased v. FastMedUrgent Care P.C.
  and Nicole M. Pisciotta PA-C
Attorney Stephen Boyce
Retained by Plaintiff

May 26, 2015
Case No. 15007857
Oklahoma Employment Security
Commission Appeal Tribunal
Hearing Officer Pam Dowd

Case Name:  Salina Hall vs. New Beginnings Medical Center
  (OKC) Behavioral Health Group
Retained by Joel Miller (for Defendant)

April 24, 2015
Case No. 1-12-021230
Nassau County, Nassau, Bahamas
Magistrate Carolyn Vogt-Evans

Case Name: Commissioner of Police v. Carla Braynen Turnquest
Attorney Thomas Desmond Bannister
Retained by Defendant

April 14, 2015
Case No. P2001-583
Hinds County, Mississippi
Judge Patricia D. Wise

Case Name:  Estate of William Wayne Warren, Sr., Deceased
Attorney Caleb Koonce
Retained by Contestant's Attorney

April 8, 2015
Case No C1329508
145th District Court
Nacogdoches County, Texas
Judge Guy Griffin

Case Name: Bobbie Hodges v. David Fleckentstein
Attorney David Buono
Retained by Plaintiff

March 11, 2015
Case No. 7505
32nd Judicial District
Mitchell County, Texas

Case Name:  State of Texas v. Jeremy Grimes
Attorney Jacob Blizzard
Retained by Defendant's Attorney

★ *Court Appointed Expert (no testimony given)*

March 11, 2015
Case No. CR14-50048-01
United States District Court
for the District of South Dakota
Judge Wollmann

Case Name:  United States of America v. Gerald Wayne LeBeau a/k/a
  Gers LeBeau
Attorney George E. Grassby
Retained by Defendant

16

*Section 7 - List of Trial and Other Testimonies*

★ *Court Appointed*

**EXHIBIT B**

February 27, 2015
Case No. 2014 DR 030519
Denver District Court, Colorado
Judge Ross B. H. Buchanan

Case Name:  Claudia Chacon v. Carlos Mejia
Attorney Joe Atolinez
Retained by Carlos Mejia

February 26, 2015
Cause No CV41400
In the 62nd Judicial District Court
of Hopkins, County Texas
Judge Will Biard

Case Name:  Leta York v. Todd Boatman
Attorney Phil Smith
Retained by Plaintiff's Attorney

February 24, 2015
Case No. EQCV 79241
In the Iowa District Court
in and for Linn County
Deposition

Case Name:  The Bank of New york Mellon Trust Company, National
   Association et al. v. ABS 509 3rd St. LLC; Alexander Ashkcnazi;
Chaim Babad; and Parties in Possession
Attorneys Brendan Kombol and Brian Nolan
Retained by Defendant BabadS

February 23, 2015
Cause No. 4:13-CV-02840
In the United States District Court
Southern District of Texas, Houston Division
Judge David Hittner

Case Name:  Youssef Sedra and Enterprise P & T Co. Inc. v. Captial
   One National Association
Attorney Mehdi Cherkaoui
Retained by Plaintiff's Attorney

February 17, 2015
Case No. 02-14-00502
Court of Common Pleas of
Allegheny County, Pennsylvania
Orphans Court Division
Judge Lawrence J. O'Toole

Case Name:  In re the Estate of Michael Kiefner
Attorney Richard T. Hast
Retained by Petitioner

December 18, 2014
Case No. DC-11-02523
191st Judicial District
Dallas County, Texas
Judge Gena Slaughter

Case Name:  Graham Rutledge & Company v. Bailey's Furniture Inc.
   et al.
Attorney Charles Caldwell
Retained by Defendant's Attorney

December 12, 2014
Case No. 201464104
151st Judicial District
Harris County, Texas
Judge Mike Englehart

Case Name:  Shycnne Rinehart v. Kathy J. Warren (aka Katy Warren
   aka Kathy Cordova)
Attorney Andrew Weisblatt
Retained by Plaintiff's Attorney

December 3, 2014
Case No CV-2013-449
In the Circuit Court of Lonoke County, Arkansas
Judge Sandy Huckabee

Case Name:  First Bank v. Lucas Family Limited Partnership, et al.
Attorney Jeffrey Moore
Retained by Defendant

November 18, 19, 20, 2014
Case No. 2007-PC-3378
Bexar Probate Court
San Antonio, Texas
Judge Thomas E. Rickoff

Case Name:  In Re: Duane J. Bellinger
Attorney Barbara Emerson
Retained by Respondent/Appellee

17

*Section 7 - List of Trial and Other Testimonies*

★ *Court Appointed*

**EXHIBIT B**

October 7, 2014
Case No. 048-259077-12
48th District Court
Fort Worth, Texas
Judge David Evans

Case Name:  Glenn Goodman & Yonghui Goodman v. State Farm Lloyds
Attorneys Randall Dean and Lindsay Daniel
Retained by Plaintiffs

September 25, 2014
Case No. 4:13-cv-02840
United States District Court
for the Southern District of Texas
Houston Division
Deposition

Case Name:  Youssef Sedra v. Capital One, National Association
Attorney Mehdi Cherkaoui
Retained by Petitioner's attorney

September 23, 2014
Case No. 2014DF30023
Summit County District Court
Breckenridge, Colorado
Judge Mark D. Thompson

Case Name:  In re the Marriage of Soni Garrett and David J. Garrett
Attorney Maryjo Zweig
Retained by Petitioner's attorney

September 22, 2014
Case No. 2011PR928
Second Judicial District
Denver, Colorado
Judge Elizabeth D. Leith

Case Name:  In the Matter of the Estate of Calvin Shimizu, Deceased, Jamie Szoke v. Bonnie Rae Trujillo-Dickson, James Gillen Dickson and Ann Kathleen May
Attorney Eliot Clauss
Retained by Petitioner's Attorney

August 18, 2014
Case No. 2013CV33692
Second Judicial District
Denver, Colorado
Judge Catherine A. Lemon

Case Name:  Sunshine Sills v. Environmental Pro Services, LLC
Attorney Amy Maestas, Leah VanLandschoot
Retained by Plaintiff

June 29, 2014
Case No. 2011 CA 000054
First Judicial District in and for
Santa Rosa County, Florida
Judge John S. Simon, Jr.

Case Name:  Wells Fargo Bank, NA, Successor by Merger to Wachovia Bank, NA v. Douglas Paul Perryman, Tricia Rene Simon, et al.
Attorney Gregory P. Farrar
Retained by Robert Homes, Esq. for Defendant

May 12, 2014
Case No. 2014CV030419
Boulder County, Colorado
Deposition

Case Name:  Patrice Rodriguez v. Wanda Rodriguez, Kevin Rodriguez & Lorenzo Rodriguez
Attorney Phillip S. Wong
Retained by Defendant's Attorney

April 25, 2014
Case No. 36-2012-2130
Lancaster County, Pennsylvania
Judge Jay J. Hoberg

Case Name:  In re: Mary Jennelle  Robinson Travis a/k/a Mary Jennelle Butler Travis
Attorney Robert W. Hallinger
Retained by Appellee

April 3, 2014
Cause No. CR12706
355th Judicial District
Hood County, Texas
Honorable Ralph H. Walton, Jr.

Case Name:  The State of Texas vs. Raul Villegas Garza
Attorney Mark Piland
Retained by Defendant

★ *Court Appointed Expert*

18

*Section 7 - List of Trial and Other Testimonies*

★ *Court Appointed*

March 18, 2014
Case No. 002013-00072
LaPaz County, Arizona
Judge Samuel Vederman

Case Name:  Cheryl Riley-Dennie v. Albert Taylor
Attorney Lyle Salekin
Retained by Albert Taylor

March 7, 2014
Case No. P0069497
District Court, Family Division
Clark County, Nevada
Deposition

Case Name:  In the Matter of The Broken Arrow Domestic No
   Grantor Irrevocable Trust
Attorney Bradley Richardson
Retained by Geoffrey J. Phillips, Esq.

February 25, 2014
Case No. 12 CV 6221
Denver County District Court
Judge Robert L. McGahey, Jr.

Case Name:  Akeem Makeen v. George H. Hailey
Retained by Plaintiff

February 13, 2014
Case No. 2011 CA 000054
Santa Rosa County, Florida
Deposition

Case Name:  Wells Fargo Bank, NA, Successor by Merger to
   Wachovia Bank, NA v. Douglas Paul Perryman, Tricia Rene Simon,
   et al.
Attorney Gregory P. Farrar
Retained by Robert Homes, Esq. for Defendant

January 27, 2014
Case No. CV-2012-051164
Maricopa County Superior Court, Arizona
Judge Katherine Cooper

Case Name:  Arthur King v. Christine King, et al.
Attorney Herschel Ber
Retained by Christine King

December 17, 2013
Case No. 22,848
259th Judicial District Court
Anson, Texas
Judge Brooks H. Hagler

Case Name:  James Shaw v. Tom Boyd, as Heir to the Estate of
   Jonnie Shaw
Attorney Frank Conrad
Retained by Plaintiff

December 16, 2013
Case No. 13S00476
Denver County Court, Colorado
Judge Buchholtz

Case Name:  Overhead Door Company of Denver, Inc. v. C & A
   Construction
Retained by Defendant

November 21, 2013
Case No. CV-2013-028
Uinta County Circuit Court, Wyoming
Judge Michael Greer

Case Name:  Barbara A. Odell v. Judd Titmus and Patricia Titmus
Attorney Loretta R.H. Gerrard
Retained by Defendant

November 12, 2013
Case No. 13-PR30397
Larimer County District Court, Colorado
Judge Stephen Jon Schapanski

Case Name:  Michael A. Young v. Patty Jo Young
Retained by Petitioner

October 31, 2013
Case No. 13 PR 30041
Larimer County District Court, Colorado
Deposition

Case Name:  In the Matter of the Estate of James O'Rorke, Deceased
Attorney Jane Ebisch
Retained by Petitioner

19

*Section 7 - List of Trial and Other Testimonies*

★ *Court Appointed*

**EXHIBIT B**

October 4, 2013
Case No.
Detroit Workers Compensation Agency
Deposition

Case Name:  Dorrinius Jewel
Attorney Paul S. Rosen
Retained by Petitioner

October 2, 2013
Case No. 11-28,098-P
County Court at Law 2
Conroe, Texas
The Honorable Claudia Laird

Case Name:  In the Estate of Deborah L. Adams, Deceased
Attorney Charles Kibler
Retained by Petitioner

September 27, 2013
Case No. 13C311
Douglas County Court, Colorado
Magistrate Robert R. Lung

Case Name:  Dawn M. Stanley and Scott K. Stanley v. Jill Cohen
Attorneys Culver Van Der Jagt and Paul Gaide
Retained by Plaintiff

September 25, 2013
Case No. 4:11-CV-00404-Y
In the United States District Court for the
Northern District of Texas, Fort Worth Division
Deposition

Case Name:  Kylee Peterson v. Wells Fargo Bank, N.A. and Wells
              Fargo Home Mortgage
Attorney Dennis D. McCarty
Retained by Plaintiff's Attorney

September 17, 2013
Case No. 12-17987 ABC
In the United States Bankruptcy Court
For the District of Colorado
The Honorable A. Bruce Campbell

Case Name:  In re: Jill C. Mordini, SSN: XXX-XX-4433
Attorney Ellen Cadette

★ Court Appointed Expert (no testimony given)

August 26, 2013
Case No. 11-28,098-P
In the County Court at Law No. 2
Montgomery County, Texas
Deposition

Case Name:  In the Estate of Deborah L. Adams, Deceased
Attorney Charles Kibler
Retained by Petitioner

June 18, 2013
Case No. 12-3384-LT
22nd District Court
State of Michigan
Deposition

Case Name:  Tommy Hartman v. Eddie Hartman
Attorney Armando Ozuna
Retained by Defendant

June 8, 2013
Case No. 4:11-CV-00404-Y
United States District Court for the Northern
District of Texas, Fort Worth Division
Deposition

Case Name:  Kylee Peterson v. Wells Fargo Bank, N.A. and Wells
              Fargo Home Mortgage
Attorney Dennis McCarty
Retained by Plaintiff's Attorney

June 5, 2013
Case No. 410CV632
United States District Court
for the Eastern District of Texas
Judge Amos L. Mazzant

Case Name:  Robert Arbuckle v. United States of America
Attorney Mark Ruppelt
Retained by Petitioner

20

*Section 7 - List of Trial and Other Testimonies*

★ Court Appointed

**EXHIBIT B**

May 28, 2013
Case No. 3:11-CV-05299-RBL
United States District Court
Western District of Washington
Judge Ronald B. Leighton

Case Name: Primerica Life Insurance Company v. Carolyn Allred
             and Shannon Atkinson
Attorneys Barry Kombol and Benjamin E. Kelly
Retained by Defendant's Attorney

April 24, 2013
Case No. C-1045449
Brazoria County Court, Texas
Judge Marc W. Holder

Case Name: Leroy Nickols v. Jesse G. Zammaron
Attorney Craig Saunders
Retained by Defendant

April 19, 2013
Case No. 2011PR928
Denver Probate Court
Denver County, Colorado
Deposition

Case Name: In the Matter of the Estate of Calvin Shimizu, et al.,
Deceased, Jaime Szoke, et al. v Bonnie Rae Trujillo-Dickson, et al.
Attorney Elliot Clauss
Retained by Petitioner's Attorney

March 19, 2013
Case No. C1045449
County Court
Brazoria County, Texas
Deposition

Case Name: Leroy Nickols v. Jesse G. Zamarron
Attorney Craig W. Saunders
Retained by Defendant

March 15, 2013
Case No. 2011PR928
Denver Probate Court
Denver County, Colorado
Deposition

Case Name: In the Matter of the Estate of Calvin Shimizu, et al.,
Deceased, Jaime Szoke, et al. v Bonnie Rae Trujillo-Dickson, et al.
Attorney Elliot Clauss
Retained by Petitioner's Attorney

March 5, 2013
Criminal No. 3:12-CR-316-L
In the United States District Court
Northern District of Texas
Dallas Division
Judge Sam A. Lindsay

Case Name: United States of America v. Michael Pringle (02)
Attorney Patrick Wright

★ Court Appointed Expert (no testimony given)

February 11, 2013
File No: 1972-CP-3767
Circuit Court for Escambia County, Florida
Probate Division
Judge J. Scott Duncan

Case Name: In Re: Estate of Erma Averhart
Attorney Robert C. Allen
Retained by Respondent's Attorney

November 15, 2012
Reg. No. 3874631-9
H.C. No. 12-0088
New York State and Local Retirement System
The Honorable Charles F. Cacciabaudo

Case Name: In the Matter of the Application of Eric Close
Attorney Richard Kesnig
Retained by Petitioner

21

*Section 7 - List of Trial and Other Testimonies*

★ *Court Appointed*

**EXHIBIT B**

November 13, 2012
File No: A 076 639 949
U.S. Department of Justice
Executive Office for Immigration Review
Dallas, County, Texas
Immigration Judge Richard R. Ozman

Case Name:  In the Matter of Edith Obiageli Nwachukwu
Attorney George Anibowei
Retained by Respondent


October 23, 2012
Cause No. 048-259077-12
48th Judicial District
Tarrant County, Texas
Deposition

Case Name:  Glenn Goodman and Yonghui Goodman v. State Farm
                      Lloyds
Attorney Randal Dean
Retained by Plaintiff's Attorney


September 11, 2012
Cause No. CV-11-16-BLG-RFC-CSO
United States District Court for the District of
Montana
Billings Division
Deposition

Case Name:  Juan Salazar v. A&J Construction of Montana, Inc.
Attorney Lucas Foust
Retained by Plaintiff's Attorney


September 26, 2012
Cause No. 36293
66th District Court
Hill County
Judge F.B. McGregor, Jr.

Case Name:  State of Texas v. Loretta Meserve

★ *Court Appointed Expert*


September 18, 2012
Case No. 11-071347-DM
20th Circuit Court
Ottawa County, Michigan
Judge Kent D. Engle

Case Name:  Jeffrey E. Anderson v. Svitlana I. Anderson
Attorney Eric E. Matwiejczyk
Retained by Petitioner


August 29, 2012
Cause No. 12 CV 303
18th Judicial District
Sedgwick County, Kansas
Deposition

Case Name: Charles M. Thompson v. Marilyn Brown and Dinning
                     Beard Real Estate, Inc.
Attorney Michael Peloquin
Retained by Plaintiff's Attorney


August 23, 2012
Case 2012-502, 943
72nd District Court
Lubbock County, Texas
The Honorable Ruben G. Reyes

Case Name:  In the Matter of the Marriage of Amy Michelle Pritchett
                      and Drew Taylor Pritchett
Attorney Barbara Dickerson
Retained by Petitioner


July 30, 2012
Case No. GC09004884-00
In the Circuit Court for the City of Charlottesville
Charlottesville, Virginia
The Honorable Edward L. Hogshire

Case Name:  Commonwealth of Virginia v. Danny Cox
Attorney Rhonda Quagliana
Retained by Defendant


22

*Section 7 - List of Trial and Other Testimonies*

★ *Court Appointed*

**EXHIBIT B**

July 25, 2012
Case No. 2012-18
Probate Court
San Jacinto County, Texas
Judge Fritz Faulkner

Case Name: In re The Estate of Robert W. Bledsoe, Deceased
Attorney E.L. McClendon
Retained by Respondent's Attorney

July 17, 2012
Case No. SC 00006450
Justice of the Peace Court, Precinct 4
Tarrant County, Texas
Judge Jacquelyn Wright

Case Name: Brenda Diane Smith v. Gretchen Hazel
Attorney Kenneth N. Price
Retained by Defendant's Attorney

June 21, 2012
Cause No. 12-0118-P
Appeals Div. Health & Human Svcs Commission
Texas Dept. of Aging and Disability Services
Administrative Law Judge Robert C. Prewitt

Case Name: In the Matter of Jana Bisbey, Grievance
Attorney Gavino Mendez
Retained by Petitioner's Attorney

April 5, 2012
Case No. 2008DR527
Boulder County District Court, Colorado
Judge Maria E. Berkenkotter

Case Name: In Re the Marriage of Nancy Elizabeth Dameron v. Gerald Scott Dameron
Attorney Kathryn Goff
Retained by Petitioner

February 24, 2012
Case No. 00819506-4
Texas Workforce Commission
Hearing Officer Mark Moore

Case Name: Maria Shadmehr v. Dr. Francisco I. Perez & Associates, P.C.
Retained by Claimant

February 23, 2012
Case No. 11S00943
Denver County District Court, Colorado
Judge Mary Celeste

Case Name: Nazir Khan v. Samina Khan
Attorney Billy-George Hertzke
Retained by Defendant

February 15, 2012
Case No. 2009PR103
Denver Probate Court, Colorado
Judge Elizabeth D. Leith

Case Name: In the Matter of the Estate of Robert S. Bacca, Deceased
Attorney Chuck Longtine
Retained by Respondent

January 17, 2012
Cause No. 16994
County Court at Law No. 1
Hunt County, Texas
Judge J. Andrew Bench

Case Name: In the Estate of Chester V. Harris
Attorney Jack Paris
Retained by Respondent

November 3, 2011
Case No. 1:2009CV01380
United States District Court
Denver, Colorado
Judge Marcia S. Krieger

Case Name: Darrell L. Havens v. William Johnson, Arvada Police Department and City of Arvada
Attorney William Muhr
Retained by Plaintiff

*Section 7 - List of Trial and Other Testimonies*

★ *Court Appointed*

**EXHIBIT B**

November 1, 2011
Case No. 50-2011CA 0006183XXXXMB
Palm Beach County
Palm Beach, Florida
Arbitrator Eric Gabrielle

Case Name:  Private Tutoring Services v. Denise Achee
Attorney Jeff Pepin
Retained by Defendant

August 16, 2011
Case No. 2010 CV 5774
Jefferson County District Court
Golden, Colorado
Judge Christie Phillips

Case Name:  Robert Tanner v. Bonnie Pritchard
Attorney Kenneth Morris
Retained by Defendant's Attorney

June 21, 2011
Case No. 324-472092-10
324th District, Tarrant County
Fort Worth, Texas
Judge Jerome S. Hennigan

Case Name:  In the Interest of CMHG, A Child
Attorney Thomas W. McKenzie
Retained by Plaintiff

June 15, 2011
Case Nos. 2009-004979-FH, 2009-003571-FH
and 2010-005474
State of Michigan Second Judicial Circuit
Berrien County Court
Judge Charles T. LaSata

Case Name:  People of the State of Michigan v. Betsy Louise Kwasny
Attorney: David S. Brady
Retained by Defendant

April 28, 2011
File No:  A 070 062 803
United States Department of Justice
Executive Office for Immigration Review
Salt Lake County, Utah
Immigration Judge William L. Nixon

Case Name:  In the Matter of Salazar, Amerido In Removal
                      Proceedings
Attorney Leonor Perretta
Retained by Defendant's Attorney

March 30, 2011
Cause No. 721432
351st Criminal District of Harris County
Houston, Texas
Judge Mark Kent Ellis

Case Name:  The State of Texas v. Teodulo Cantu
Attorney Reynaldo Ramirez
Retained by Defendant's Attorney

January 31, 2011
Case No. CR-2010-0013319-MWS
Thornton Municipal Court
Adams County, Colorado
Judge Charles Rose

Case Name:  City of Thornton v. Mary Amber Martinez
Court Appointed Attorney: Peter D. Larato

★ *Court Appointed Expert (no testimony given)*

December 21, 2010
Case No. 2010 PR 31
Jefferson County Probate Court
Jefferson County, Colorado
Judge Steven M. Munsinger

Case Name:  In the Matter of the Estate of Francis L. Dunn
Attorney Janice M. Whalen
Retained by Petitioner's Attorney

24

*Section 7 - List of Trial and Other Testimonies*

★ *Court Appointed*

**EXHIBIT B**

December 15, 2010
Case No. 2010 S 837
Arapahoe County Court
Littleton, Colorado
Judge M. Edward Burns

Case Name:  Todd Thompson v. Dejon Austin Malley
Retained by Defendant

November 10, 2010
Case No. 2009C5579
Boulder County Court
Boulder County, Colorado
Judge John F. Stavely

Case Name:  Virtuecom, LLC, f/d/b/a Computer Specialists For Rent
   LLC v. Bagi Mechanical, LLC
Attorney James Hult
Retained by Defendant's Attorney

November 9, 2010
Case No. CV 10-272
JP Court
Kaufman County, Texas
Judge Patricia Ashcroft

Case Name:  Robert E. Peters v. Rita Hendrickson
Retained by Plaintiff

October 20, 2010
Case No. A079-196-470
United States Department of Justice
Executive Office of Immigration Review
Arlington County, Virginia
Immigration Judge Lawrence O. Burman

Case Name:  Re:  Woong Chung In Removal Proceedings
Attorney Rachel Ullman
Retained by Defendant's Attorney

May 26, 2010
Case No. 09 PR 1379
Jefferson County Probate Court
Jefferson County, Colorado
Judge Stephen M. Munsinger

Case Name:  In re the Estate of Lois Rossorelli
Attorney: David Gloss
Retained by Petitioner

February 25, 2010
Appeal No. 1233814-1
Texas Workforce Commission
Hearing Officer L. Busch

Belia Garcia v. Bellamie Inc.
Retained by Defendant

February 22, 2010
Case No. 2009CV1526
Douglas County District Court, Colorado
Deposition

Case Name:  Phillip David Haskett v. Woodmoor Mountain
   Homowners Association & Daniel H. Holloman
Attorneys Kristine K. Hayter & Lorna H. Horton
Retained by Defendant's Attorneys

November 20, 2009
Case No. PB-09-68
Beckham County Probate Court
Sayre, Oklahoma
Judge Doug Haught

Case Name:  In Re the Estate of Buddy Passmore
Attorney Stephen Beam
Retained by Petitioner

September 25, 2009
Case No. 2009C50996
Denver County Court, Denver, Colorado
Judge Herbert Galchinsky

Case Name:  Z Properties, LLC v. A. Gehad Abuagina
Attorney Vern Corporon
Retained by Defendant's Attorney

25

*Section 7 - List of Trial and Other Testimonies*

★ *Court Appointed*

**EXHIBIT B**

LIST OF PUBLICATIONS

1.      How to Spot a Forgery (to be used in conjunction with class instruction)

2.      Working With An Expert Witness

**EXHIBIT B**

GERSH & THOMAIDIS, LLC

JAMES N. THOMAIDIS, ESQ.
RAWI J. PATEL, ESQ
D. ELIZABETH WILLS  ESQ. OF COUNSEL
MILO N. GONSER  ESQ. OF COUNSEL

1860 BLAKE STREET
SUITE 400
DENVER, COLORADO 80202
(303) 293-2333
(303) 293-2433 FAX

MILES M. GERSH
(1944-2014)

May 11, 2015

Wendy Carlson
Certified Forensic Document Examiner
America's Handwriting Expert, LLC
1550 Larimer Street, Suite 251
Denver, CO 80202

Re:  Engagement Agreement

Dear Ms. Carlson:

This letter agreement embodies the terms of your engagement by GERSH & THOMAIDIS, LLC (hereinafter the "Firm") to represent our clients, Porcelanosa Los Angeles, Inc. Porcelanosa New York, Inc., Porcelanosa Texas Corp. and Porven Ltd. (hereinafter collectively the "Client"), in connection with the following matter:

Crew Title Distribution, Inc., et al. v. Porcelanosa Los Angeles, Inc., et al., Case No. 13-cv-03206-WJM-KMT, pending before the United States District Court for the District of Colorado.

Pursuant to this letter agreement, you will provide services as an independent professional in the area of forensic document examination and handwriting analysis, related to two purported contracts in the above captioned case. Your analysis will include a professional review and written opinion on the authenticity of these two purported contracts. As we discussed, one of the aforementioned two contracts was purportedly executed in triplicate. Your analysis will also include a professional review and written opinion on the authenticity of these three purportedly original versions of that contract.

You agree to use your best efforts to provide independent professional expertise in the area of forensic document examination and handwriting analysis, including the provision of services consistent with industry standards and professional conduct in Colorado. The Firm agrees to promptly take actions reasonably necessary to assist and facilitate your performance of your services to the Client, as provided in this letter agreement.

You have requested an engagement fee for services of One thousand two hundred dollars($1,200.00), and the Firm has agreed to pay said engagement fee, which shall be due as soon as reasonably practical following the execution of this letter agreement by both you and a representative of the Firm. The Firm understands and agrees that billings for services performed or expenses incurred shall be charged against the engagement fee until such time as it is exhausted, and at such time you may request the engagement fee be replenished.

You shall be paid on a flat fee basis in accordance with your fee schedule for all tasks

**EXHIBIT B**

**GERSH & THOMAIDIS, LLC**

Ms. Wendy Carlson
May 11, 2015
Page 2 of 3

performed under this agreement, including but not limited to analysis, preliminary examination and opinion, consultation, case review, technical investigation, laboratory work, photographs, report preparation, oral opinion, letters of opinion, pre-trial conferences, deposition and trial preparation, report generation and for testimony at a deposition or trial.

The Firm agrees to be responsible for all payments to you, as outlined in this contract and your invoices will be paid within 30 days of receipt by the Firm.

It is expressly agreed between you and the Firm that you are in all respects an independent contractor.

Either you or the Firm may terminate this letter agreement by informing the other of the decision to do so in writing.

This letter agreement shall be interpreted in all respects under the laws of the State of Colorado. In the event any dispute should arise under this agreement, such dispute shall be resolved in the trial courts of the City and County of Denver, State of Colorado.

Your signature below represents your agreement with the terms set forth herein. Please return a signed copy of this letter to my office and we will submit the required engagement fee.

Sincerely,

GERSH & THOMAIDIS, LLC

James N. Thomaidis

2

**EXHIBIT B**

GERSH & THOMAIDIS, LLC

Ms. Wendy Carlson
May 11, 2015
Page 3 of 3

I accept the terms of this agreement:

Dated this 12th day of May 2015.

EXPERT:
America's Handwriting Expert, LLC

_____
Wendy Carlson

FIRM:
GERSH & THOMAIDIS, LLC

_____
James N. Thomaidis

3

**EXHIBIT B**