**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.13-cv-03206-WJM-KMT

**CREW TILE DISTRIBUTION, INC.**, a Colorado corporation;

    Plaintiff and Counter Defendant,

and

**RYAN A. DAVIS**, an individual;
**DARLYNE A. DAVIS**, an individual;
**GLENN L. DAVIS**, an individual;
**SHANA L. BASTEMEYER**, an individual;
**PARADIGM TILE & STONE DISTRIBUTORS, LLC**, a Colorado limited liability company;
and **G&D DAVIS HOLDINGS, LLC**, a Nevada limited liability company.

    Counter Defendants,

v.

**PORCELANOSA LOS ANGELES, INC**., a California corporation;
**PORCELANOSA NEW YORK, INC**., a New Jersey corporation;
**PORCELANOSA TEXAS, CORP**., a Texas corporation; and
**PORVEN, LTD.**, a Delaware corporation,

    Defendants and Counter Claimants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S AND COUNTERCLAIM**
**DEFENDANTS' JOINT MOTION *IN LIMINE***

---

Defendants, Porcelanosa Los Angeles, Inc., Porcelanosa New York, Inc., Porcelanosa Texas Corp., and Porven, Ltd. (collectively "Defendants"), through counsel, hereby submit this Response to Plaintiff's and Counterclaim Defendants' Joint Motion *in Limine* to Exclude Certain Evidence, Testimony, and Argument (the "Response"). As grounds, Defendants state as follows:

### I.    INTRODUCTION

As the Court stated in its Summary Judgment Order [Dkt. No. 236], "[t]here is no apparent way to reconcile the factual disputes without raising the suspicion that one or more parties is being dishonest," which the Court observes, "…is troubling, to say the least." The Joint Motion *in*

1

*Limine* [Dkt. No. 251] (the "Motion") asserts that Defendants seek to "discredit Counterclaim Defendant Ryan Davis and improperly attack his character, Defendants seek to introduce evidence of an unrelated contract from 2004." (*See* Motion, at p. 2, ¶ 3, referencing the July 29, 2004 "Exclusivity Agreement," **Exhibit A**). The Motion also argues "Defendants intend to introduce evidence about a personal relationship…to impugn Mr. Davis's character." (*See* Motion, at p. 2, ¶ 4- p. 3, ¶ 1). While the subject matter here is troubling, the evidence the Motion seeks to exclude is not only relevant, but critical for jury review, given the facts and assertions in this case.

## II.   ARGUMENT

### A.   *The Exclusivity Agreement is Relevant and Admissible, Including Under 404(b)(2)*

The Motion asserts that Ryan Davis "worked with a company named Infinite Flooring & Design," and "entered into a contract…to potentially distribute ventilated facades in a four state region." (*See* Motion, at p. 4, ¶ 2). However, nine days prior to the purported execution of the Exclusivity Agreement, Ryan Davis was terminated, without eligibility for rehire, for an undisclosed "conflict of interest," due to "his personal involvement with another tile company." (*See* July 21, 2004 Ryan Davis Termination Documents, at pp. 1-2, **Exhibit B**). These acts were violations of Porcelanosa Los Angeles, Inc.'s Standards of Conduct and Conflict of Interest Policy, both with which Ryan Davis affirmed he would comply, notwithstanding other performance problems. (*See* Feb. 5, 2002, Standards of Conduct, at p. 1, ¶ 2 and p. 2, ¶ 10, **Exhibit C**; June 29, 2004, Conflict of Interest Agreement, at p. 1, ¶¶ 1-2, 5, 7, **Exhibit D**; July 13, 2004, Memorandum re Ryan Davis Conduct, at p. 1, ¶¶ 1-2, and p. 2, ¶¶ 2-4, **Exhibit E**; Sept. 9, 2003 and March 15, 2004 Warning Correspondence, **Exhibit F**). Ryan Davis, Darlyne Davis, and Glenn Davis started and operated Infinite Flooring & Design, Inc. ("Infinite Flooring"), while Ryan Davis was supposed to be working for Porcelanosa Los Angeles, Inc., and Darlyne Davis executed the dealer application for Infinite Flooring, using her maiden name "Johnson." (*See* March 25, 2004,

Customer App., at pp. 1-4, **Exhibit G**).  Nevertheless, the Exclusivity Agreement was executed.

The Motion says the Exclusivity Agreement "was never acted upon, and it went into a folder after it was signed with no further action by either Infinite or Porcelanosa." (*See* Motion, at p. 4, ¶ 2).  In fact, the Davises did act on the claimed contract, as Plaintiff, Crew Tile Distribution, Inc., in late 2009, but their efforts were not successful. (*See* Sept. 9, 2009 E-mail from Ryan Davis on Façades Exclusivity, at pp. 1-2, **Exhibit H**).  Jack Handley, Francisco Montilla and Manuel Prior were all questioned on the Exclusivity Agreement, including related to follow-up correspondence produced by Defendants. (*See e.g.* Nov. 19, 2014 Dep. Tr. of Jack Handley, **Exhibit I**, at 128:2-136:22 and 297:1-304:24; Nov. 20, 2014 Dep. Tr. of Francisco Montilla, **Exhibit J**, at 174:8-175:18; March 24, 2015 Dep. Tr. of Manuel Prior, **Exhibit K**, at 114:13-115:12; Sept. 10, 2009 E-mails from Jack Handley on Façades Exclusivity, at pp. 1-4, **Exhibit L**).

The existence and validity of the Distributor Agreement does not "hinge" merely on the events that occurred in December 2009. (*See* Motion, at p. 4, ¶ 3).  Plaintiff placed the Exclusivity Agreement at issue when its attorneys sought out and deposed former Porcelanosa Los Angeles, Inc., General Manager, Josep Domingot, questioning him about the validity of the contract.  Josep Domingot testified that: (a) he did not sign the alleged Exclusivity Agreement; (b) he would not have signed such a contract nine days after terminating Ryan Davis's employment; and (c) he could not have signed the contract because he was not then employed in the capacity depicted in the claimed contract. (*See* March 24, 2015 Dep. Tr. of Josep Domingot, **Exhibit M**, at 32:13-36:16; and 109:2-112:14).  Josep Domingot, like Jack Handley and Francisco Montilla, all Porcelanosa Los Angeles, Inc. employees, testified that these contracts were in essence— fake.

The Exclusivity Agreement possesses many of the same characteristics as the Distributor Agreement.  It confers on: (a) one of Ryan Davis's, Darlyne Davis's, and Glenn Davis's "family" businesses, Infinite Flooring (a corporation not formed until more than a year after the contract's

3

execution—*see* Infinite Flooring Colorado Articles of Incorporation, dated September 27, 2005, at pp. 1-3, **Exhibit N**); (b) from "Porcelanosa Group," an incorrect reference to Porcelanosa Grupo, which does not have its place of business in Anaheim, California; (c) an "exclusive right to distribute all products associated with the *Ventilated Facades* to include the tile, framing and bracketing in the Colorado, Utah, New Mexico and Arizona territories," a misspelled reference to a tile product of Defendants, encompassing a fictitious four state territory. (*See* **Ex. A**, at p. 1, Section I) (emphasis existing).  Ventilated façades are not a "different product," as the Motion claims, but instead were manufactured by "Butech," incorrectly spelled "Buetek" by the Davises and Shana Bastemeyer when creating the fake Distributor Agreement in April of 2013, but indisputably included in its terms. (*See e.g* **Ex. N**, at pp. 14-15).  The Exclusivity Agreement was to be "binding for (7) seven years from the date the system [for ventilated façades] is approved in the United States," and therefore would have been in effect at least until the Davises dissolved Infinite Flooring, including for several months in which the Distributor Agreement was ostensibly in effect. (*See* **Ex. I**, at 129:9-25).  Infinite Flooring also purchased products, including around the Distributor Agreement's execution. (*See e.g.* E-mail re: Invoices, dated Dec. 4, 2009, **Exhibit O**).

The Exclusivity Agreement reiterates: "IFD also agrees that it will be exclusive with PG in representing products and will not seek competitor's materials or value engineer projects." (*See* **Ex. A**, at p. 2, Section 8).  It also gives IFD "the exclusive right to distribute all products," related to ventilated façades. (*See* **Ex. A**, at p. 1, Section I).  It was Ryan Davis's testimony that Josep Domingot wanted the Exclusivity Agreement because "I had a lot of knowledge of ventilated facades" and "Josep did not want to lose that knowledge," just as Ryan Davis indicated was Defendants' motivation for entering into the Distributor Agreement. (*See* May 27, 2015 Dep. Tr. of Ryan A. Davis, **Exhibit P**, at 368:20-369:17, 106:25-108:25; Oct. 19, 2015 Dep. Tr. of 30(b)(6) of Crew Tile Distribution, Inc. – Ryan Davis, **Exhibit Q**, at 111:5-112-12 and 402:6-20).

B.     *The Davises' Use of Attorneys is Relevant and Admissible, Including Under 404(b)(2)*

Regarding Ryan Davis's relationship with Michelle Sudovich, Defendants freely acknowledge that Mr. Davis's "failed personal relationship", the "longstanding custody dispute", and Ryan Davis's behavior involving his minor children, are not relevant to this trial. (*See* Motion, at p. 2, ¶ 4- p. 3, ¶ 1). However, Defendants deny that their intention is to "impugn Mr. Davis's character." Instead, certain documents, including what is included as Exhibit 2 to the Motion, are relevant to these proceedings for a wholly different reason— to demonstrate Ryan Davis, Darlyne Davis, and Glenn Davis used attorneys for everything. The use of attorneys included when: (a) Ryan Davis was represented by Attorney John Hedrick, to protect his interests with respect to his minor child, including in April of 2004 (*see e.g*, Letter re: Bryce Davis, dated April 13, 2004, **Exhibit Q**); (b) when Ryan Davis was represented by Heupel Law, P.C., to file his voluntary petition for bankruptcy, in March of 2011 (*see* **Exhibit R**, Ryan Davis, Voluntary Petition in Bankruptcy, dated April 13, 2004, at p. 3); (c) when Ryan Davis, Darlyne Davis, and Glenn Davis created Paradigm Tile & Stone Distributors, LLC, G&D Davis Holdings Trust, G&D Davis Holdings, LLC, the Radicchio Domestic Trust, and the Stardust Domestic Trust, with the assistance of the Berken Law Office, LLC and Attorneys Stephen Berken and Tony Estrada, in August of 2012 (*see*, Apr. 16, 2015 Dep. Tr. of Glenn Davis, **Exhibit S**, at 165:19-168:1); and (d) when Plaintiff and Counterclaim Defendants retained the services of Burg, Simpson, Eldredge, Hersh & Jardine, PC, in late-2013, to pursue Defendants' ostensible breach of the Distributor Agreement (*see*, Nov. 26, 2014 Dep. Tr. of Bastemeyer, **Exhibit T**, at 24:3-27:2 and 327:7-329:8). The use of attorneys by the Davises is critical given their assertion that they never sought an attorney's advice with respect to negotiation, drafting and execution of the Distributor Agreement— perhaps the most significant legal document, with the most significant financial ramifications, that either Ryan Davis or Darlyne Davis would ever sign.

5

C.      *Legal Standards Regarding Admissibility of the Exclusivity Agreement and Attorneys*

The Motion argues that evidence related to the July 29, 2004 Exclusivity Agreement and correspondences among Ryan Davis's attorneys is sought to impugn his character. Rather, the Exclusivity Agreement and Plaintiff's and Counterclaim Defendants' use of attorneys are relevant because each tends to make the forgery of the Distributor Agreement and a conspiracy among Counterclaim Defendants more probable than without the evidence. Fed.R.Evid. 401.

The Court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value. *See e.g. Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1526 (10th Cir. 1997). While this Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, very serious claims have been alleged, which impute the honesty and truthfulness of both parties and non-parties. Fed.R.Evid. 403. The Exclusivity Agreement's probative value far outweighs any danger of unfair prejudice because it possesses many of the same characteristics as the Distributor Agreement and involves a Porcelanosa Los Angeles, Inc. employee as signatory, who also denies signing the contract. The probative value outweighs any danger of unfair prejudice with respect to Plaintiff's and Counterclaim Defendants' use of attorneys, since aside from Plaintiff's and Counterclaim Defendants' own testimony, no evidence or documentation exists of the negotiation, drafting or execution of a bargained for relationship in the form of the Distributor Agreement.

Further, the proper application of Rule 404(b) turns on the facts of the case. For example, the Exclusivity Agreement confers the same type of "exclusivity" that Plaintiff alleges was conferred in the Distributor Agreement— and demonstrates plan, motive, intent, absence of mistake, and lack of accident. *See* Fed.R.Evid. 404(b)(2). Plaintiff and Counterclaim Defendants use of attorneys for everything except the Distributor Agreement— demonstrates knowledge, absence of mistake, and lack of accident. *See* Fed.R.Evid. 404(b)(2).

WHEREFORE, Defendants and Counterclaimants request this Court deny Plaintiff and Counterclaim Defendants' Joint Motion *in Limine* to Exclude Certain Evidence, Testimony, and Argument.

DATED this 6th day of February, 2017.

        Respectfully submitted,

        GERSH & THOMAIDIS, LLC

        By: */s/ James N. Thomaidis* .
            James N. Thomaidis
            1860 Blake Street, Suite 400
            Denver, CO 80202
            303.293.2333
            jt@gtattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of February 2017, a true and correct copy of the foregoing was filed and sent electronically to the following:

    David Crough
    Michael Burg
    David K. TeSelle
    Burg, Simpson, Eldredge, Hersh & Jardine, PC-Englewood
    40 Inverness Drive East
    Englewood CO 80112
    (303) 792-5595
    (303) 708-0527 – Fax
    dcrough@burgsimpson.com
    mburg@burgsimpson.com
    dteselle@burgsimpson.com

        By: */s/ James N. Thomaidis* .
            James N. Thomaidis