**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-3206-WJM-KMT

CREW TILE DISTRIBUTION, INC.,

Plaintiff and CounterDefendant,

and

RYAN A. DAVIS,
DARLYNE A. DAVIS,
GLENN L. DAVIS,
SHANA L. BASTEMEYER,
PARADIGM TILE & STONE DISTRIBUTORS, LLC, and
G&D DAVIS HOLDINGS, LLC,

Counterclaim Defendants,

v.

PORCELANOSA LOS ANGELES, INC.,
PORCELANOSA NEW YORK, INC.,
PORCELANOSA TEXAS, CORP., and
PORVEN, LTD.,

Defendants and CounterClaimants.

---

**ORDER DENYING PLAINTIFF'S AND COUNTERCLAIM DEFENDANTS' MOTION FOR NEW TRIAL**

---

This business dispute brought under 28 U.S.C. § 1332 proceeded to a jury trial March 13–24, 2017, and a jury verdict entered on the parties' legal claims. (ECF No. 355.) Following post-trial briefing, the Court entered its own rulings on the parties' equitable claims, and Final Judgment entered November 20, 2017. (*See* ECF Nos. 392 & 393.) Now before the Court is the Motion for New Trial filed by Plaintiff and

CounterClaim Defendants (together, “Crew Tile”) on November 20, 2017 (ECF No. 394 (the “Motion”)), to which Defendants/CounterClaimants (together, “Porcelanosa”) filed a Response on December 5, 2017 (ECF No. 397). For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

The Court does not repeat here the detailed factual background of this case, which has been set out in prior orders. (*See, e.g.*, ECF Nos. 236, 392.) Broadly summarized, Crew Tile alleged that it entered into a contract in December 2009 to be the exclusive distributor of Porcelanosa’s products in Colorado (the “2009 Agreement”), and that Porcelanosa had breached that contract, triggering a $2.5 million termination payment to Crew Tile. (*See generally* ECF No. 250 at 2–4.) Porcelanosa alleged that the 2009 Agreement was a forgery, and that Crew Tile’s lawsuit against Porcelanosa for that alleged agreement was a sham.

Separate from the disputed 2009 Agreement at the center of the parties’ claims, discovery revealed the existence of a document which appeared to be an “Exclusivity Agreement” dated July 29, 2004, and signed by Ryan Davis and a former Porcelanosa officer, Josep Domingot (on behalf of “Porcelanosa Group (PG) Anaheim California”), purportedly granting exclusive distribution rights for certain ventilated facade products manufactured by Porcelanosa to a predecessor entity to Crew Tile, also controlled by Ryan Davis. (Trial Ex. J.; ECF No. 251-1 (the “2004 Agreement”).) However, in his sworn deposition testimony, Mr. Domingot denied ever having negotiated or signed such an agreement with Ryan Davis. (ECF No. 267-13 at 4–6.) Certain other facts

about this document also cast doubt on its authenticity. (*See* ECF No. 392 at 24, ¶ 20.c.)

Prior to trial, Crew Tile moved to exclude any evidence of this 2004 Agreement, arguing it was irrelevant and improperly prejudicial under Federal Rules of Evidence 401 and 403, and constituted impermissible character evidence under Rule 404. (ECF No. 251 at 1–8.) The Court denied Crew Tile's motion to exclude all evidence related to the 2004 Agreement. The Court reasoned that "the evidence related to the alleged 2004 contract is a material part of th[e] overall history of the parties' business relationships, and this remains true, regardless of which side's evidence the jury ultimately believes." (ECF No. 279 at 26–27.) The Court also held that "to the extent evidence related to the 2004 contract could be viewed as a character attack," potentially subject to exclusion under Rule 404(a), "it is nevertheless admissible under Rule 404(b) to prove, among other things, the parties' knowledge of one another's business goals or practices, the existing relationship between the parties, and the parties' opportunity to modify or expand an (allegedly) pre-existing distribution agreement." (*Id.* at 27.) However, the Court expressly noted that "[a]t trial the Court will entertain a request . . . seeking a limiting instruction to direct the jury that it should not weigh evidence related to the 2004 agreement as character evidence, or as evidence tending to show that the conduct of any party in 2009 was in keeping with prior conduct or character." (ECF No. 279 at 28 n.11.)

At trial, evidence related to the 2004 Agreement was admitted. Per its usual practice, the Court reminded all parties that its pretrial evidentiary rulings are "not self-executing," and that "it was incumbent on counsel to raise objections based on [the

Court's] rulings . . . at trial." (Tr. at 1085.)[1] However, at no point during trial did Crew Tile's counsel object that evidence related to the 2004 Agreement was being admitted in violation of either the Court's pretrial evidentiary rulings or Rule 404, nor that such evidence or argument had become impermissibly prejudicial in violation of Rule 403.[2] Crew Tile also did not request any limiting instruction with respect to the 2004 Agreement specifically, or to character evidence in general. (*See* ECF Nos. 261, 315; *see also* Tr. at 2173–82.)

After hearing nine days of evidence, the jury returned a verdict in Porcelanosa's favor, finding, in part, that Crew Tile and certain of its principals committed the tort of abuse of process by prosecuting a lawsuit predicated on the 2009 Agreement. In addition, the Court's subsequent rulings on equitable claims found, among other facts, that a preponderance of the evidence showed the 2009 Agreement was not a legitimate contract, and that Ryan Davis's testimony regarding the 2004 Agreement was not credible. (*See* ECF No. 392 ¶¶ 1–2, 20.c.)

## II. LEGAL STANDARD

Rule 59(a)(1) permits the Court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Here, Crew Tile argues for a new trial on grounds that the Court erred in allowing evidence of the

---

[1] With the exception of the trial transcript, citations to all materials in the docket are to the docketed "ECF No." Citations to the trial transcript ("Tr.") are to the page number in the continuously-paginated trial transcript, docketed at ECF Nos. 359–69.

[2] Crew Tile's Motion raises no instances where such a contemporaneous objection was raised during trial, and the Court's own review of the Trial Transcript identifies no such objections raised under Rules 403, 404, or 608.

2004 Agreement, and also suggests that the arguments advanced by Porcelanosa's counsel related to the 2004 Agreement were improper. (ECF No. 394.)

Where a party seeks a new trial based on a claim of the Court's error, the Court may grant such a motion if "the 'claimed error substantially and adversely' affected the party's rights." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (quoting *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998)). "A motion for new trial is addressed to the sound discretion of the trial court." *Shugart v. Cent. Rural Elec. Co-op.*, 110 F.3d 1501, 1506 (10th Cir. 1997). The district court is given "wide latitude with respect to a motion for a new trial because it is uniquely able to assess the likelihood that the evidence was prejudicial." *Henning,* 530 F.3d at 1217 (internal quotation marks omitted; alterations incorporated). Likewise, as to alleged improper conduct or argument by an attorney, "[t]he decision on whether counsel's misconduct at trial was so egregious as to require retrial is left largely to the discretion of the district court." *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1175 (10th Cir. 2003).[3]

In addition, Rule 61 provides that "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial," and that "the court must disregard all errors and defects that do not affect any party's substantial rights."

---

[3] *Accord Spahr v. Ferber Resorts, LLC,* 419 F. App'x 796, 805 (10th Cir. 2011) (". . . the district judge . . . is usually in the best position to determine any prejudice and the need for a new trial"); *Whittenberg v. Werner Enterprises Inc.*, 561 F.3d 1122, 1128 (10th Cir. 2009) (the trial judge "is uniquely positioned to assess the prejudicial effect of an improper argument in the context of the overall trial").

## III. ANALYSIS

Crew Tile argues Porcelanosa's evidence regarding the 2004 Agreement "was not used in a manner allowed under [Rule] 404(b), rather it was repeatedly used by Defendants' counsel . . . to prove that Ryan Davis was a serial forger," allegedly in violation of Rule 404(a). (ECF No. 394 at 5.) Analysis of Crew Tile's argument turns on two questions: (1) whether admission of evidence regarding the 2004 Agreement was, in fact, in error; and (2), if so, whether any such error was sufficiently prejudicial to require a new trial.[4]

### A. Evidence of the 2004 Agreement Was Properly Admitted

Federal Rule of Evidence 404 addresses "Character Evidence" and provides, in relevant part:

> (a)(1) Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.
>
> * * *
>
> (b) Crimes, Wrongs, or Other Acts.
>
> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses; * * * This evidence may be admissible for another purpose, such as proving motive, opportunity,

---

[4] Crew Tile argues in a footnote that the Court should also grant a new trial based on claimed error in the admission of the expert testimony of Crew Tile's handwriting expert, Ms. Carlson. (ECF No. 394 at 8 n.1.) The Court rejects this argument because it is "inadequately developed," *see United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013), and in light of the Court's extensive pretrial analysis allowing Ms. Carlson's testimony under Rule 702 (ECF No. 237 at 4–23).

> intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The relevant analysis here proceeds under Rule 404(b). The precedent applying this rule provides:

> To determine whether Rule 404(b) evidence is properly admitted, [the Court look[s] to the four-part test from *Huddleston v. United States*, 485 U.S. 68 (1988):
>
> > (1) The evidence must be offered for a proper purpose under Rule 404(b);
> >
> > (2) The evidence must be relevant under Rule 401;
> >
> > (3) The probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and
> >
> > (4) The district court, upon request, must have instructed the jury pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

*United States v. Henthorn*, 864 F.3d 1241, 1247–48 (10th Cir. 2017), *pet'n for cert. pending*. "Admissibility of evidence under Rule 404(b) involves a case-specific inquiry that is within the district court's broad discretion." *Id.* at 1248.

Although Crew Tile does not cite or apply this four-part test, its argument is directed to the first element, arguing that evidence of the 2004 Agreement "was used only as a character attack," and not for any purpose permitted under Rule 404(b)(2). (ECF No. 394 at 9.) However, the permissible purposes for admitting evidence under Rule 404(b)(2) are "illustrative, not exhaustive," and "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other . . . acts except that which tends to prove *only* criminal disposition." *Henthorn*, 864 F.3d at 1248. (internal quotation marks and

citation omitted; emphasis in original). Engaging in the requisite case- and fact-specific analysis, the Court adheres to its pretrial view that even assuming it was otherwise inadmissible, evidence of the 2004 Agreement was admitted for proper purposes under Rule 404(b)(2), including to show "the history of the business relationship between [Crew Tile] and Porcelanosa," and the parties' knowledge "of one another's business goals or practices." (ECF No. 279 at 26, 27.) In fact, as actually admitted at trial, this evidence came in as part of a larger body of evidence setting out the history of the parties' dealings, including Ryan Davis's former employment with Porcelanosa and his development of several business entities which sold Porcelanosa's products in Colorado. In addition, to prevail on its abuse of process claim, Porcelanosa was required to prove the CounterDefendants acted intentionally and with knowledge that the 2009 Agreement was not valid, making the existence of the 2004 Agreement admissible to "rebut the defense of accident or to show plan and intent." *Cf. Henthorn*, 864 F.3d at 1249. In short, based on the nature of the evidence, the record of how it was introduced, and in the exercise of the Court's discretion, the Court disagrees with Crew Tile's claim that evidence of the 2004 Agreement was introduced only as an improper character attack.

Crew Tile's Motion does not address the other three *Huddleston* factors, and the Court finds they all support admissibility here. Regarding relevance, as the Court found pretrial, evidence of the 2004 Agreement could make either side's factual claims more likely, depending how the jury viewed the competing evidence. The 2004 Agreement was also very similar to the 2009 Agreement, since both ostensibly granted exclusive distribution rights, both were effectively entered between the same parties, and both

contained numerous drafting errors (which might tend to show that both were inauthentic, *or* that Porcelanosa had a history of tolerating such errors prior to 2009). *Cf. Henthorn*, 864 F.3d at 1249 ("[t]he lynchpin of *Huddleston* relevance is similarity"). The relevance of the 2004 Agreement was also independent of any inference regarding Ryan Davis's character, since, as analyzed above, it was introduced as part of a larger body of evidence documenting the parties' business history, and was relevant to the parties' claims without the jury needing to draw any forbidden inference regarding Ryan Davis's character. *Id.* at 1254 ("[a]lthough the evidence may allow the jury to draw negative inferences about [defendant's] character, such inferences are not required before a jury may find that the prior incidents are relevant for a proper purpose"). Indeed, if the jury had believed Ryan Davis that the 2004 Agreement was authentic, this evidence would still have been relevant and admissible.

For similar reasons, the Court finds that the prejudicial effect of any evidence regarding the 2004 Agreement, if any, did not outweigh its probative value. Having presided over the entire trial, the Court rejects Crew Tile's contention that this evidence was unduly prejudicial or inflammatory, either by its inherent nature or in the way it was presented. This is so particularly in the context of a trial where both side's claims already, and necessarily, accused the other side and multiple witnesses of blatant dishonesty and misconduct. Moreover, and significantly, Crew Tile never raised any Rule 403 objection to this evidence during trial.

"The fourth and final *Huddleston* factor requires the district court, *upon request*, to instruct the jury to consider the evidence only for the purpose for which it was admitted." *Henthorn*, 864 F.3d at 1256 (emphasis added). Since Crew Tile made no

such request, this presents no grounds to have excluded the evidence, much less to grant a new trial.

Finally, to the extent Crew Tile argues this evidence was improper under Rule 608(b), the Court rejects this argument for largely the same reasons addressed above. Evidence regarding the 2004 Agreement was admissible to show that it was either more or less likely that Porcelanosa and Crew Tile entered into a similar agreement in 2009, irrespective of any potential (but not necessary) inferences regarding Ryan Davis's character for truthfulness. *Cf. Henthorn*, 864 F.3d at 1252 ("[e]vidence remains admissible even if it has the potential impermissible side effect of allowing the jury to infer criminal propensity, so long as the jury is not required to make any such inferences" (internal quotation marks omitted)). Moreover, Crew Tile elicited evidence regarding this agreement during Ryan Davis's direct testimony, as well as during the testimony of its first witness, Ray Perry, thus "opening the door" to other evidence regarding the 2004 Agreement. (*See, e.g.,* Tr. at 244, 279–80, 604–06.) Crew Tile did not thereafter raise any objections that evidence elicited by Porcelanosa regarding the ventilated facades, including the 2004 Agreement, was improper extrinsic evidence meant only to impugn Ryan Davis's character, in violation of Rule 608.

**B. Any Prejudice Does Not Warrant a New Trial**

Even assuming some portion of evidence regarding the 2004 Agreement was admitted in violation of Rule 404 and/or Rule 608, Crew Tile has not carried its burden of showing that any prejudice it suffered was of a degree warranting a new trial.

"As a general rule, courts will not disturb jury verdicts in the absence of extreme

circumstances, such as a case of manifest injustice." 12-59 *Moore's Federal Practice–Civil* § 59.13 (Matthew Bender 3d ed. 2017) ("*Moore's*"). Thus, as a practical matter, in both civil and criminal cases, "motions for a new trial are disfavored and rarely granted." *See United States v. Cole*, 2007 WL 1489811, at *2 (D. Colo. May 18, 2007) (citing *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999)); *cf. Spahr v. Ferber Resorts, LLC*, 686 F. Supp. 2d 1214, 1223 (D. Utah 2010) ("vacating a jury award and ordering a new trial on the basis of an inappropriate closing argument is an extreme remedy only to be granted in unusual cases"), *aff'd*, 419 F. App'x 796 (10th Cir. 2011).

Here, in the exercise of its discretion, and having presided over the lengthy and highly-contested trial of this matter, the Court is in no way persuaded by Crew Tile's argument that its rights were substantially and adversely impacted, that a manifest injustice was done, or that Crew Tile was denied a fair trial. Although the jury might have concluded from evidence of the 2004 Agreement that it was forged by Ryan Davis, it might also have accepted his own testimony, in which he adamantly maintained that the 2004 Agreement was a legitimate contract which he had negotiated and signed with Mr. Domingot. Or the jury might have reached no ultimate conclusion regarding the 2004 Agreement at all, and simply viewed it as part of the extensive evidence of the parties' prior dealings, which could tend to make it either more or less likely that they mutually entered into the separate 2009 Agreement. Thus, while this evidence was arguably prejudicial in the sense that a jury crediting Porcelanosa's evidence would be more likely to find against Crew Tile, the reverse was also true. The

Court disagrees with Crew Tile's suggestion that the 2004 Agreement was presented in a manner that was given undue emphasis, deployed as a character assassination, or used to create an improper degree of prejudice or emotional response.

Moreover, during trial Crew Tile *never* raised contemporaneous objections that this evidence was being introduced in violation of the Court's pretrial ruling regarding its acceptable purposes under Rule 404(b) or in violation of Rules 403 or 608. By the Court's count, Crew Tile's Motion cites 29 examples from the trial transcript where Crew Tile claims that Porcelanosa's argument or introduction of this evidence was improper. (*See* ECF No. 394 at 6–9.) However, Crew Tile raised contemporaneous objections in only 3 of these 29 instances, and then only on unrelated grounds (hearsay, lack of foundation, or an improper leading question). Crew Tile cites no instances where it objected that evidence of the 2004 Agreement was being introduced in a manner that ran afoul of the Court's pretrial evidentiary rulings or violated any combination of Rules 403, 404(b), or 608.

This total lack of contemporaneous objections corroborates the Court's view that the manner in which this evidence was introduced was not, in fact, unfairly prejudicial. In any event, the failure to raise contemporaneous objections is effectively fatal to Crew Tile's subsequent, *post hoc* argument that the presentation of this evidence and argument was so utterly improper as to require a new trial. *See Moore's* § 59.13 ("The improper admission of evidence at trial may warrant the grant of a motion for new trial . . . . However, *a new trial motion based on [this] ground[] requires a proper objection at trial and is limited to the basis of the objection argued when the evidence was offered*

*for admission*." (emphasis added)); 11 Charles A Wright, *et al.*, *Federal Practice & Procedure* § 2805 (3d ed., Apr. 2017 update) ("A principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result. * * * The importance of Rule 61 in its application to motions for a new trial cannot be overlooked. It provides specifically that 'unless justice requires otherwise,' no error 'is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order.'").

In short, even assuming there was some error in the Court's admission of evidence regarding the 2004 Agreement, Crew Tile has fallen well short of persuading the Court that it was denied a fair trial or that either justice or the standards of Rule 59 call for the Court, in the exercise of its discretion, to grant a new trial.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's and Counterclaim Defendants' Motion for New Trial (ECF No. 394) is DENIED.

Dated this 29th day of December, 2017.

BY THE COURT:

______________________
William J. Martinez
United States District Judge